819 F.2d 214
 16 Collier Bankr.Cas.2d 1394, Bankr. L. Rep. P 71,821
In the Matter of BISHOP, BALDWIN, REWALD, DILLINGHAM & WONG,
INC., a Hawaii corporation, Debtor.
Reynaldo D. GRAULTY, Trustee, of Bishop, Baldwin, Rewald,
Dillingham & Wong, Inc., and not individually,
Plaintiff-Appellee,
v.
Cynthia Michelle BROOKS, Defendant-Appellant.
 No. 86-1825.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 7, 1987.
Decided June 4, 1987.
 
 Richard S. Kanter and James A. Wagner, Honolulu, Hawaii, for plaintiff-appellee.
 Arthur B. Reinwald, Honolulu, Hawaii, for defendant-appellant.
 Appeal from the United States District Court for the District of Hawaii.
 Before POOLE, NORRIS and BRUNETTI, Circuit Judges.
 BRUNETTI, Circuit Judge:
 
 Overview
 
 1
 Brooks invested funds with the debtor company. She made three deposits and three withdrawals in 1983. The trustee sought to recover Brooks' last $3,000 withdrawal as a preference under 11 U.S.C. Sec. 547(b). When Brooks refused to return the money to the bankruptcy estate, the trustee filed an adversary proceeding in the District Court. The District Court granted the trustee's motion for summary judgment, holding that the $3,000 payment was a voidable preference that did not fall within the exception established by 11 U.S.C. Sec. 547(c) for transactions within the ordinary course of the debtor's business. Brooks timely appealed, claiming that (1) there exist genuine issues of material fact as to whether the alleged preference was more than she would receive in a liquidation and (2) the withdrawal falls within the section 547(c) exception for payments in the ordinary course of the debtor's business or financial affairs. We reject both of these claims and affirm.
 
 Discussion
 1. Standard of Review
 
 2
 A grant of summary judgment is reviewed de novo. Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir.1986). The appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Ashton v. Cory, 780 F.2d 816, 818 (9th Cir.1986).
 
 2. Section 547(b) Preference
 
 3
 All five requirements of 11 U.S.C. Sec. 547(b) must be met before a transfer is voidable as a preference. E.g. In re Mobley, 15 B.R. 573, 575 (Bankr. S.D.Ohio 1981). In this case, Brooks contends that the payment does not meet the requirements of 11 U.S.C. Sec. 547(b)(5) (1982), which provides that the trustee may avoid only a transfer of the debtor's property:
 
 
 4
 (5) that enables such creditor to receive more than such creditor would receive if--
 
 
 5
 (A) the case were a case under Chapter 7 of this title;
 
 
 6
 (B) the transfer had not been made; and
 
 
 7
 (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
 
 
 8
 Brooks argues that the affidavit attached to the trustee's summary judgment motion is inadequate to establish that the $3,000 payment is more than she would have received in a liquidation of the estate. We disagree. While the affidavits attached to the motion and Brooks' opposition to the motion show a dispute as to some facts, the undisputed facts and Brooks' statement of disputed facts taken together establish that section 547(b)(5) is met.
 
 
 9
 First, it is undisputed that Brooks received a $3,000 check within 90 days of the filing of the bankruptcy petition. While the amount of the debt owed Brooks was disputed in the motion for summary judgment and objections to the motion, for the purpose of our review, we assume that Brooks' affidavit correctly states the balance in her investment account at $8,986.[1] Finally, the trustee stated that an unsecured creditor was likely to receive between 5% and 20% of his or her claim upon final liquidation of the debtor. Brooks did not dispute this statement. Brooks' alleged preference of $3,000 is about 33% of the $8,986 debt owed her by the debtor. On these facts, the district court was compelled to hold that the $3,000 payment was more than the amount Brooks would receive in a liquidation and properly ordered summary judgment in favor of the trustee.
 
 
 10
 3. "Ordinary Course of Business or Financial Affairs" Exception To Preference Avoidance Provision
 
 
 11
 Section 547(c) contains several exceptions to the general avoidance provision of section 547(b). The issue presented in this case is whether the payment to Brooks falls under the exception in section 547(c)(2), which provides:
 
 
 12
 (c) The trustee may not avoid under this section a transfer--
 
 
 13
 (2) to the extent that such transfer was--
 
 
 14
 (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
 
 
 15
 (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
 
 
 16
 (C) made according to ordinary business terms[.]
 
 
 17
 11 U.S.C. Sec. 547 (Supp. II 1984)(emphasis added).[2] The District Court concluded that "since the withdrawal was for the sole benefit of one creditor and since [the debtor] was not a legitimate business but rather the operation of a Ponzi scheme, the $3,000 withdrawal was not made in the ordinary course of business, and is an avoidable preference." Brooks does not dispute that the debtor was operating a Ponzi scheme or that a Ponzi scheme is not a "business." She acknowledges that transfers related to the scheme are not within the "ordinary course of business." In re Independent Clearing House Co., 41 B.R. 985, 1014 (Bankr.D.Utah 1984), and In re Western World Funding, Inc., 54 B.R. 470, 481 (Bankr.D.Nev.1985).
 
 
 18
 Brooks instead argues that Independent Clearing House and Western World Funding do not hold that the fact that the debtor is operating a Ponzi scheme precludes a defense to avoidance of transfers made in the ordinary course of "financial affairs." Brooks has cited no cases for her position and we have discovered none. The rationale of Independent Clearing House and Western World Funding applies to "financial affairs" as well as "business" and we affirm on that ground.
 
 
 19
 In Independent Clearing House, the court reasoned that payments pursuant to a Ponzi scheme are not protected from avoidance:
 
 
 20
 While "ordinary course of business" is not expressly defined in the Bankruptcy Code, it appears that the purpose of Section 547(c)(2) was to protect from preference ordinary trade credit transactions that are kept current, including payment of monthly utility bills. S.Rep. No. 95-989, 95th Cong., 2d Sess. 88 (1978), 1978 U.S. Code Cong. & Admin. News, p. 5874. After removing the "reasonable cause to believe the debtor was insolvent" element of former preference law, Congress found in Section 547(c)(2) a means to protect normal financial relations between the debtor and its creditors.
 
 
 21
 Reading the ordinary course of business exception in the light of the purpose behind Section 547(c)(2), it is clear that Congress did not intend to protect one group of investors in a "Ponzi" scheme over the rest.
 
 
 22
 41 B.R. at 1014 (citations omitted). It is true that Independent Clearing House discusses the exception for "business" but not for "financial affairs," but in our view it is a distinction without a difference. We agree with Independent Clearing House that Congress did not intend to protect one investor to the detriment of other investors victimized in a Ponzi scheme.
 
 
 23
 The appellant contends that her $3,000 withdrawal was consistent with "normal financial relations between herself and the debtor." But the fact that there exists a history of similar transactions between the debtor and creditor does not establish that the latest payment is within the "ordinary course of financial affairs" of the debtor. Assuming Brooks was an innocent investor who thought she was dealing with a legitimate investment venture, the payment may have been within the "ordinary course" as to her. But section 547 also requires that the payments were made in the ordinary course of business or financial affairs of the debtor.
 
 
 24
 We agree with bankruptcy courts that have addressed the issue that Ponzi schemes simply are not legitimate business enterprises which Congress intended to protect with section 547(c)(2):
 
 
 25
 To apply [Sec. 547(c)(2) ] to immunize these activities "would lend judicial support to 'Ponzi' schemes by rewarding early investors at the expense of later victims." [Citing Independent Clearing House, 41 B.R. at 1004.] These defendants received the funds from investments made on the eve of bankruptcy, by persons who recovered nothing. Equity requires that these creditors all share equally in whatever assets are available. If decisions such as this and Clearing House help to discourage these Ponzi arrangements by encouraging more careful investment activities on the part of the ordinary "consumer investor", there will be fewer defrauded creditors to sit at the defendant's table in preference suits in the future.
 
 
 26
 Western World Funding, 54 B.R. at 481 (citation omitted). See also Independent Clearing House, 41 B.R. at 1014-15.
 
 
 27
 The judgment of the district court is affirmed.
 
 
 
 [1]
 Contrary to Brooks' assertions on appeal, the District Court also assumed that the debt was $8,986 for the purpose of the summary judgment motion
 
 
 [2]
 This subsection was amended in 1984 to eliminate a requirement that a payment must be made within 45 days after the debt paid was incurred to escape avoidance under Sec. 547(c)(2). See 11 U.S.C. Sec. 547(c)(2)(B) (1982). We raised the issue whether the older version (and thus the 45 day rule) applied to this case. Because we hold that transfers pursuant to a Ponzi scheme are not in the ordinary course of business or financial affairs of the debtor, we do not reach this issue