In re **BULLION RESERVE OF NORTH AMERICA,** A California Corporation,

**Curtis B. DANNING, Chapter 7 Trustee, Plaintiff–Appellee,**

v.

**Theodore P. BOZEK, Defendant–Appellant.**

**No. 86–6649.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 9, 1987.

Decided Jan. 11, 1988.

Ronald Gold, Murphy & Gold, Woodland Hills, Cal., for defendant-appellant.

Isaac M. Pachulski, Theodore B. Stolman, Stutman, Treister & Glatt, Los Angeles, Cal., for plaintiff-appellee.

Before SNEED, PREGERSON and KOZINSKI, Circuit Judges.

PREGERSON, Circuit Judge:

Theodore P. Bozek appeals from a district court's order affirming a bankruptcy court's grant of summary judgment in favor of the bankruptcy trustee for Bullion Reserve of North America (BRNA). The trustee, Curtis B. Danning, sued Bozek under 11 U.S.C. § 547(b) to set aside and recover an alleged preferential transfer made by BRNA to Bozek. We affirm.

## BACKGROUND

BRNA was a California corporation that purported to be in the business of buying precious metals (bullion) for the public through a "member account program." Customers became member account program participants by filling out a short application and paying a nominal administrative fee. Thereafter, program participants were entitled to purchase bullion through BRNA at wholesale prices fixed in the international market. BRNA charged a commission on all bullion orders it executed.

BRNA published a brochure describing its program. The brochure warranted that, upon request, BRNA would segregate and store a program participant's bullion in a storage vault at Perpetual Storage Incorporated. BRNA also represented that the stored bullion would be under the trusteeship of the Intermountain Depository Corporation, its wholly owned subsidiary.

In fact, BRNA never fulfilled its obligation to purchase and store bullion for program participants. Instead, BRNA comingled funds it received from program participants and deposited those monies into its own general bank accounts. Once in BRNA's accounts, the participants' funds were further comingled with income BRNA received from other sources. BRNA then used the money in its accounts to pay various expenses, including its general operating costs. BRNA did store a

small amount of bullion at Perpetual Storage Incorporated. However, the amount of bullion BRNA stored at Perpetual Storage Incorporated was insufficient to cover storage orders placed by member account program participants. BRNA frequently had to purchase bullion on the open market to meet liquidation demands. Eventually, BRNA encountered financial difficulties and, on October 3, 1983, filed for relief under Chapter 11 of the Bankruptcy Code. On January 10, 1984, the bankruptcy court converted BRNA's Chapter 11 reorganization to a Chapter 7 liquidation proceeding.

Bozek became a member account program participant in December 1981. Thereafter, between 1981 and 1983, Bozek purchased bullion through BRNA.[1] Like many program participants, Bozek asked BRNA to store his bullion. On August 22, 1983, forty-two days before BRNA filed for Chapter 11 relief, Bozek liquidated his member account and received bullion worth $212,138.60 from BRNA.

Subsequently, on August 9, 1984, BRNA's bankruptcy trustee brought this adversary action against Bozek under 11 U.S.C. § 547 (1982) to recover the bullion as a preferential transfer. The bankruptcy court granted summary judgment in favor of the trustee and the district court affirmed. We review the bankruptcy court's grant of summary judgment de novo. *See Nash v. Kester (In re Nash)*, 765 F.2d 1410, 1412 (9th Cir.1985).

## ANALYSIS

■ A bankruptcy trustee may recover property for the benefit of the debtor's estate if there (1) was a transfer; (2) of property of the debtor; (3) to or for the benefit of a creditor; (4) for or on account of an antecedent debt; (5) made while the debtor was insolvent; (6) made on or within ninety days before the date of the filing of the debtor's bankruptcy petition; (7) that enables the creditor to receive more than he would receive if the transfer had not

---

1. Bozek sent funds to BRNA on December 21, 1981; March 19 and June 14, 1982; and June 6, 1983.

been made and the debtor's estate liquidated according to the provisions of the bankruptcy code. 11 U.S.C. § 547(b) (1982).[2] The burden of proving the existence of these elements is on the bankruptcy trustee. *Grover v. Gulino (In re Gulino)*, 779 F.2d 546, 549 (9th Cir.1985).

Bozek contends that the bankruptcy court erred by finding that (1) the bullion BRNA transferred to him was property of the debtor, (2) he was BRNA's creditor, and (3) the transfer of bullion was on account of an antecedent debt. Bozek also contends that, if the transfer was a preference, it was excepted from avoidance under § 547(c)(1) and (2).

### 1. Property of the debtor

Bozek argues that the bullion he received was not property of the debtor, BRNA, because it was purchased with money fraudulently obtained from member account program participants. In effect, he argues that he should be allowed to keep the bullion because he was a victim of BRNA's misconduct.

■ The term "property of the debtor" is not defined in the Bankruptcy Code. However, we define the term broadly. *Elliot v. Frontier Properties (In re Lewis W. Shurtleff, Inc.)*, 778 F.2d 1416, 1419 (9th Cir.1985). Generally, property belongs to the debtor for purposes of § 547 if its transfer will deprive the bankruptcy estate of something which could otherwise be used to satisfy the claims of creditors. *Cf. Coral Petroleum, Inc. v. Banque Paribas-London*, 797 F.2d 1351, 1355–56 (5th Cir. 1986) (debtor has an interest in property under § 547 if the transfer diminishes the bankruptcy estate).

■ Here, the money BRNA used to purchase bullion came from comingled bank accounts under BRNA's control. Because this money could have been used to pay other creditors, it presumptively constitutes property of the debtor's estate. *Henderson v. Allred (In re Western World Funding, Inc.)*, 54 B.R. 470, 475 (Bankr.D. Nev.1985).[3]

The dual purpose of § 547 warrants reaching this result. That purpose is to discourage creditors from racing to the courthouse to dismember the debtor during its slide into bankruptcy and to further the prime bankruptcy policy of equal distribution among similarly situated creditors. *Valley Bank v. Vance (In re Vance)*, 721 F.2d 259, 260 (9th Cir.1983). There is evidence that Bozek directed BRNA to transfer bullion to him after learning of BRNA's financial difficulties. More importantly, Bozek's acquisition of bullion during the ninety day preference period allowed him to recover 100% of his claim against BRNA, while other customers were left to share equally in BRNA's remaining assets. While we appreciate Bozek's plight as a victim, we are also mindful of our obligation to secure an equitable distribution of BRNA's assets among all its creditors.

■ Bozek also contends that his agreement with BRNA created an express trust under California law that prevented his funds and their product, the bullion, from becoming property of the debtor. Property held in trust by a bankruptcy debtor belongs to the beneficiary of the trust. *Elliot v. Bumb*, 356 F.2d 749, 753 (9th Cir.), *cert. denied*, 385 U.S. 829, 87 S.Ct. 67, 17 L.Ed.2d 66 (1966). State law determines whether a trust exists in federal bankruptcy proceedings. *Toys "R" Us,*

---

**2.** The Bankruptcy Code was amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984. Pub.L. No. 98–353, § 553(a), 98 Stat. 333, 392 (1984). However, those amendments do not apply to this case because BRNA filed its bankruptcy petition in 1983. *Id.; see Henderson v. Allred (In re Western World Funding, Inc.)*, 54 B.R. 470, 473 n. 1 (Bankr.D. Nev.1985). Accordingly, all references in this decision to the Bankruptcy Code are to the Bankruptcy Reform Act of 1978, 11 U.S.C. §§ 101–151326 (1982).

**3.** This presumption may be overcome in a variety of ways. For example, under a constructive trust theory, a program participant could claim any funds traced through BRNA's comingled accounts. *See Elliot v. Bumb*, 356 F.2d 749, 754 (9th Cir.), *cert. denied*, 385 U.S. 829, 87 S.Ct. 67, 17 L.Ed.2d 66 (1966). But here, Bozek is unable to trace his funds to the bullion he received from BRNA.

*Inc. v. Esgro, Inc. (Matter of Esgro, Inc.),* 645 F.2d 794, 797 (9th Cir.1981).

There is no indication that BRNA intended to assume the duties of a trustee. *See* Cal.Civ.Code § 2222 (West 1985) (repealed July 1, 1987) (trust created as to trustee by conduct indicating his acceptance of trust). The member account program brochure specified that the Intermountain Depository Corporation would be a trustee for participants' bullion stored at Perpetual Storage Incorporated.[4] BRNA never stated it would be a trustee of the funds it received from program participants.

Moreover, even if an express trust were created, Bozek would still have a duty under federal bankruptcy law to trace his funds to the bullion he received. Such a tracing requirement is necessary to further the Bankruptcy Code's policy of equal distribution among similarly situated creditors. *See Elliott,* 356 F.2d at 755 (state trust law must be applied in a manner consistent with federal bankruptcy policy). Here, Bozek cannot trace the money he gave BRNA to the bullion he received. Therefore, the bullion is property of the debtor under § 547.[5]

### 2. Creditor and Antecedent Debt

Bozek contends he is not a creditor and that the transfer was not on account of an antecedent debt because BRNA did not owe him anything before making the bullion transfer. Bozek bases his argument on the idea that he never had a creditor's claim against BRNA because bullion was transferred to him upon demand and he did not suffer economic injury.

■ This argument ignores the Bankruptcy Code's broad definitions. A "creditor" is defined as an "entity that has a claim against the debtor." 11 U.S.C. § 101(9) (1982). "Claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(4) (1982). The legislative history of the Bankruptcy Code indicates that Congress intended to provide the broadest possible definition of "claim" when it enacted § 101(4). *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 309, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6266; S.Rep. No. 989, 95th Cong. 2d Sess. 21, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5808; *see also Ohio v. Kovacs,* 469 U.S. 274, 279, 105 S.Ct. 705, 708–09, 83 L.Ed.2d 649 (1985); *Kallan v. Litas,* 47 B.R. 977, 982–83 (N.D.Ill.1985).

Under these definitions, it is clear that Bozek became a creditor when he transferred funds to BRNA for the purchase of bullion. At that moment, Bozek accrued a right to demand bullion from BRNA. This right, although unmatured, constituted a "claim" under the Bankruptcy Code. *See Grover v. Gulino (In re Gulino),* 779 F.2d 546, 551–52 (9th Cir.1985) (transferee becomes a creditor by making a payment under a contract to purchase property).[6]

---

**4.** Apart from the brochure, no other document mentions the existence of a trust relationship.

**5.** California trust law is not to the contrary. *See, e.g., Kobida v. Hinkelmann,* 53 Cal.App.2d 186, 195, 127 P.2d 657, 661–62 (1942) (noting that when a trustee is insolvent, and the rights of other creditors are involved, a beneficiary must trace his funds through a trustee's comingled account).

**6.** To support his contention that he is not BRNA's creditor, Bozek erroneously relies on *Richardson v. Shaw,* 209 U.S. 365, 28 S.Ct. 512, 52 L.Ed. 835 (1908). In *Richardson,* the Supreme Court found that no preference arose when an insolvent stockbroker returned stock he held for a client. The Court held that the broker was "essentially a pledgee." 209 U.S. at

380, 28 S.Ct. at 517. The Court also implied that the client was not a creditor because he held a pledgor's interest in the stock he received. *Id.* However, *Richardson* was decided under prior bankruptcy law when the definition of "claim" was not as broad. *See Matter of Mandalay Shores Cooperative Housing Association,* 54 B.R. 632, 635 (Bankr.M.D.Fla.1984) (Congress intended to give "claim" in the Bankruptcy Code a broader definition than under previous law). Under modern bankruptcy law, the *Richardson* client would be a creditor because his pledgor's interest would be a claim. *See Herman Cantor Corp. v. Central Fidelity Bank (In re Herman Cantor Corp.),* 15 B.R. 747, 749 (Bankr.E.D.Va. 1981).

Bozek's contention that the transfer of bullion was not on account of an antecedent debt is also incorrect. "Antecedent debt" is not defined in the Bankruptcy Code. However, "debt" is defined as "a liability on a claim." 11 U.S.C. § 101(11) (1982). The terms "debt" and "claim" are coextensive. When a creditor has a claim against the debtor, the debtor owes a debt to the creditor. H.R.Rep. No. 595, 95th Cong. 1st Sess. 310, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6267; S.Rep. No. 989, 95th Cong., 2d Sess. 23, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5809; *see also Henderson,* 54 B.R. at 476. Bozek accrued a claim against BRNA when he paid for the bullion. Likewise, BRNA incurred a debt to Bozek as of this time. Therefore, the subsequent transfer of bullion was on account of an antecedent debt.

### 3. Exceptions to § 547(b)

Bozek has the burden of proving that the bullion transfer is excepted from the trustee's avoidance power. *In re American Ambulance Service, Inc.,* 46 B.R. 658, 660 (Bankr.S.D.Cal.1985). Bozek first contends that the transfer cannot be set aside because it was a contemporaneous exchange for new value under 11 U.S.C. § 547(c)(1). In order for a transfer to come within this exception, it actually must be "substantially contemporaneous" with the giving of new value by the creditor. *Ray v. Security Mut. Finance Corp. (In re Arnett),* 731 F.2d 358, 364 (6th Cir.1984).

Bozek has not shown that he received the bullion near the time he delivered funds to BRNA.[7] Bozek last paid BRNA for bullion on June 6, 1983, but he did not receive the bullion until August 22, 1983. The seventy-seven day time span in this case between Bozek's payments and BRNA's bullion transfer is too great to be considered "substantially contemporaneous."

Bozek also argues that the transfer cannot be set aside because it was made in the ordinary course of business. *See* 11 U.S.C. § 547(c)(2) (1982). Recently, this court held that transfers made in a "Ponzi" scheme[8] are not made in the ordinary course of business. *Graulty v. Brooks (Matter of Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.),* 819 F.2d 214, 216 (9th Cir.1987). In *Graulty,* we explained that Congress intended the ordinary course of business exception to apply only to transfers by legitimate business enterprises. *Id.* at 217. We also noted that the Bankruptcy Code's purpose was not to protect one victim of a debtor's fraud at the expense of others. *Id.*

Our reasoning in *Graulty* applies here. BRNA was a fraudulent business of the type Congress did not intend to protect under § 547(c)(2). Moreover, it would be inequitable to allow Bozek to obtain a 100% recovery on his claim while relegating other defrauded program participants to general unsecured creditor status in BRNA's bankruptcy proceeding. Equity requires that all these creditors share equally in whatever assets are available. *Id.* at 217.[9]

AFFIRMED.

---

**7.** Bozek claims that he received bullion at Perpetual Storage Incorporated at the time that he delivered funds to BRNA. However, the record indicates BRNA did not buy and store metal for Bozek upon receiving his money. Rather, BRNA comingled Bozek's money with that of other customers and purchased bullion for storage in very small amounts. Therefore, it cannot be said that BRNA purchased bullion for any particular customer.

**8.** A "Ponzi" scheme is any sort of fraudulent arrangement that uses later acquired funds or products to pay off previous investors. *See Merrill v. Abbott (In re Independent Clearing House),* 41 B.R. 985, 994 n. 12 (Bankr.D.Utah 1984) (describing history of "Ponzi" schemes), modified, 62 B.R. 118 (D.Utah 1986). The record indicates that BRNA was conducting such a scheme when it used newly acquired funds, from its comingled accounts, to buy bullion for customers who demanded their metal.

**9.** The ordinary course of business exception is inapplicable for another reason. The Bankruptcy Code only protects a preferential transfer that is made within forty-five days after the debtor incurs a debt to the creditor. 11 U.S.C. § 547(c)(2)(B) (1982). Here, BRNA owed a

debt to Bozek for more than forty-five days before transferring bullion to him.