**In the Matter of Ronald COHEN, Debtor.**

**Dale WOOTTON, Trustee For the Estate of Ron Cohen a/k/a Ronald Cohen, Appellee,**

v.

**V.W. BARGE, III, Appellant.**

No. 88–1722.

United States Court of Appeals, Fifth Circuit.

June 19, 1989.

James L. Schutza, Dallas, Tex., for appellant.

Dale Wootton, Dallas, Tex., for appellee.

Before GARWOOD, JONES and SMITH, Circuit Judges.

EDITH H. JONES, Circuit Judge:

The bankruptcy trustee of an estate created by a Ponzi scheme seeks to recover as preferential payments certain amounts paid by the debtor to appellant V.W. Barge, III within ninety days preceding the bankruptcy. The district court affirmed the bankruptcy court's judgment in favor of the trustee pursuant to 11 U.S.C. § 547. We hold that although 11 U.S.C. § 548(b) may cover payments made to Barge that exceeded his "investment" with the debtor, § 547 does not. Consequently, we affirm in part and reverse in part.

The facts have been agreed or stipulated. Ron Cohen, the debtor, operated a multi-million dollar sham stock brokerage business in a typical Ponzi scheme. That is, he enticed investors into his web with promises of 17% to 20% returns on their "investments," or on promissory notes. After he received their money, Cohen would frequently send confirmation slips to the "customers" reflecting what he represented to be purchases or sales of stock on their behalf. Cohen was not, however, a licensed stockbroker, for he had been barred from associating with any member of the National Association of Security Dealers, Inc. Although he did occasionally purchase and sell some shares of stock, those transactions did not correlate to his "confir-

mations" for his clients in general or for Barge in particular. The continuing success of the scheme depended on Cohen's ability to attract new investors whose money would be used to pay the earlier ones. Cohen commingled all of the "investors'" funds he received.

At the time Cohen voluntarily sought relief under Chapter 7 of the Bankruptcy Code, Barge had invested over $2.3 million with Cohen. He received approximately $2.5 million from Cohen, of which $730,-876.25 was, to Barge's misfortune, paid within ninety days of the bankruptcy filing.

Dale Wootton, trustee for Ron Cohen's estate, sued Barge to recover the payments he received within ninety days of bankruptcy as preferential transfers under 11 U.S.C. § 547(b). The bankruptcy court entered judgment for Wootton, and its decision was sustained on appeal by the district court. Barge appeals, contending that (1) he was not a "creditor" of Ron Cohen, (2) there was no "antecedent debt" on account of which Cohen made payments to him, and alternatively (3) the maximum amount recoverable as a preference was the amount Barge invested with Cohen, and not any funds in excess of that "investment."

## DISCUSSION

The preference provision of the Bankruptcy Code enables a trustee to recover for the benefit of all creditors payments that the debtor has made within a short period prior to his bankruptcy. The objectives of this provision are to put creditors on an equal footing with each other by disallowing such preferential payments and to discourage creditors' race to dismember the debtor in anticipation of bankruptcy. 4 *Collier on Bankruptcy* ¶ 547.01 at 547–11 (15th Ed.1988) (hereafter, *"Collier"*). Section 547(b) empowers the trustee to avoid any transfer of property of the debtor:

(1) To or for the benefit of a creditor;

(2) For or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) Made while the debtor was insolvent;

(4) Made—[in pertinent part] on or within ninety days before the date of the filing of the petition; and

(5) That enables such creditor to receive more than it would have received if the transfer had not been made and the debtor's estate were liquidated according to the provisions of the Code.

The trustee had the burden to prove that each of these criteria was satisfied as to the challenged payments made by Cohen to Barge. 11 U.S.C. § 547(g). Barge contests the bankruptcy court's findings only on the first and second elements of the preference statute.

■ There is no merit in Barge's initial claim that he was not a "creditor" of Cohen in any way. The Bankruptcy Code defines a creditor as an entity that has a claim against the debtor. 11 U.S.C. § 101(9). A "claim" is defined in the broadest possible terms as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured," or a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment. 11 U.S.C. § 101(4). Barge asserts that he entrusted his money to Cohen, gambling on the stock market and assuming the risk whether he could make a profit. This assertion flies in the face of the bankruptcy court's finding that Cohen defrauded Barge and the other investors by never or rarely purchasing stock for them and having no intention of making money for them in the stock market. Regardless whether Barge's transactions with Cohen create claims in the nature of contract, based on breach of Cohen's obligation to invest in stock, or in fraud, they are nevertheless claims as defined by the Bankruptcy Code. See discussion at 4 *Collier* ¶ 547.04, at 547–30–31. Barge was thus a creditor of Cohen to the extent of funds he committed to Cohen.

Likewise, Cohen's repayment of funds to Barge up to the $2.3 million that Barge invested with him were for or on account of an antecedent debt. Barge asserts that as he was not legally entitled to any return on

his investment, there was no indebtedness, pre-existing or otherwise, and therefore no claim which would fall in the category of antecedent debt. The Bankruptcy Code defines a debt as liability on a claim. 11 U.S.C. § 101(11). The terms creditor and debt are thus statutorily congruent. Cohen owed a debt to Barge inasmuch as he was liable on Barge's claims against him. The claims may be characterized in contract or fraud, but they are claims in bankruptcy nevertheless.

The express terms of the Bankruptcy Code foreclose Barge's defense based on the first two elements of § 547(b). *See also In re Bullion Reserve of North America*, 836 F.2d 1214 (9th Cir.1988) (party who committed money to a fraudulent gold bullion operation and actually received bullion within ninety days of bankruptcy was a creditor paid on account of antecedent debt). Because Barge has not contested the other statutory prerequisites to an avoidable preference, the bankruptcy court's judgment must be upheld insofar as it required Barge to repay the payments he received which compensated for the $2.3 million he had invested.

■ The foregoing reasoning does not, however, justify the bankruptcy court's treatment as preferential payments of some $211,817.32 in "profits" received by Barge over and above his investment with Cohen. The lower courts and the trustee explain in a conclusory fashion that such excess funds *must* be part of Barge's claim on which he is a creditor of Cohen. We disagree. This reasoning perpetuates the theory that the transaction between Barge and Cohen had economic substance and a profit potential. Contrary to this supposition, however, the bankruptcy court had

already found that the stock reported as sold for Barge involved fictitious transactions for which Cohen did not actually own sufficient amounts of stock to cover all of his customers' competing claims. If the transactions are consistently characterized as fraudulent, then Barge's claim against the estate derives from fraud and would seek no more than restitution of the amount he committed to Cohen. Such a claim would generate no right by Barge to payment of stock sale "profits." On the other hand, even if Barge's investment created a contractual relationship with Cohen, Barge was not contractually entitled to receive "profits" on sales of stock that did not occur. We are unable to agree with the lower courts' conclusion that Barge had a claim, i.e. a right to payment, from Cohen in excess of the amount he invested with him.

No case cited by the parties or located in research has held that fictitious profits paid to an investor in a Ponzi scheme are statutory preferences. The results, rather, have depended on the precise facts of each scheme and the nature of the investor's claim.[1] For instance, in *Bullion Reserve, supra*, the investor had paid money to the debtor to purchase gold bullion on an international market. He was ordered to repay the debtor's estate because he received bullion within the preference period. No issue of "profit" arose. By contrast, the victims of the scheme in *In re Western World Funding, Inc.*, 54 B.R. 470 (Bptcy.Nev. 1985), possessed the debtor's promissory notes and received some payments of principal and interest within the preference period. The claims of those creditors rested on their promissory notes.[2] Here, by contrast, Cohen did not contract to pay Barge

---

1. The rate of recovery in Ponzi schemes is ordinarily low. Only in rare circumstances does an investor like Barge fortuitously recover more than he put into the scheme. Usually, investors' defenses against preference actions have unsuccessfully asserted that the debtor held their money in constructive trust and thus returned only what they originally owed. *See e.g., Cunningham v. Brown*, 265 U.S. 1, 44 S.Ct. 424, 68 L.Ed. 873 (1924) (the original Ponzi case; preferentially paid creditors had received their principal back on Ponzi's worthless promissory notes); *In re Bullion Reserve, supra; In re Inde-*

pendent Clearing House, Co., 77 B.R. 843 (D.Utah 1987); *In re Western World Funding, Inc.*, 54 B.R. 470 (Bptcy.Nev.1985).

2. Some creditors argued that payments of interest to them were for interest obligations that accrued contemporaneously and accordingly fell within various exceptions to § 547(b) or were not paid on account of antecedent debt. 54 B.R. 477–80. It was undisputed, however, that their claims arose out of these notes.

interest; his contractual obligation for "profits" arose only if he made a profit selling stock for Barge. Cohen was not personally liable for profit if none resulted.

The trustee contends that in excluding from Barge's preference liability the fictitious "profit" he received over and above his $2.3 million investment with Cohen, we violate the subsequent advance exception to preference liability codified at 11 U.S.C. § 547(c)(4). This section provides that a creditor is not liable for payments within the ninety days preceding bankruptcy to the extent that it subsequently furnished unsecured credit to the debtor. 4 *Collier* ¶ 547.12 at 547–51. The subsequent advance exception substantially modified its predecessor provision, Section 60c in the former Bankruptcy Act, which stated a "net result rule" affording broader protection for creditors who dealt on open account with the debtor preceding bankruptcy. According to the trustee, our analysis represents an unauthorized return to the "net result rule". Again, we disagree. Both Sections 60c and 547(c)(4), as *exceptions* to the preference provision, assume that a creditor has a claim enforceable against the debtor for the entire amount he receives in payment. These sections are irrelevant to the issue before us.

That there was not a preferential transfer of the $211,817.32 excess funds paid to Barge does not necessarily mean that he will retain a profit from the misfortune of other people duped by Cohen. Such payments may well constitute a fraudulent conveyance avoidable pursuant to 11 U.S.C. § 548. Indeed, courts have ruled for trustees asserting such claims against investors in other Ponzi schemes. *Rosenberg v. Collins*, 624 F.2d 659 (5th Cir.1980); *In re Independent Clearing House Company*, 77 B.R. 843 (D.Utah 1987). The trustee here did not predicate his claim on § 548, and we need not analyze its applicability further.

For the foregoing reasons, we conclude that Barge received $519,077.68 in preferential payments from Cohen within ninety days of his bankruptcy, and judgment should be entered against him for that amount. The remaining $211,817.32 represents monies paid to Barge in excess of the amount he invested with Cohen, and such funds were neither part of a claim by Barge against Cohen nor paid on account of an antecedent debt.

The judgments of the bankruptcy and district courts are *AFFIRMED* in part and *REVERSED* in part and *REMANDED* for entry of judgment in accordance herewith.