In re AMERICAN CONTINENTAL
CORPORATION, an Ohio
corporation, Debtors.

AMERICAN CONTINENTAL
CORPORATION,
Plaintiff,

v.

ALL PREFERENCE DEFENDANTS,
Defendants.

No. CIV 89–1231 PHX–RMB.

Bankruptcy No. B 89–3117 PHX–RMB.

Adv. Nos. 91–2001 to 91–4095.

United States District Court,
D. Arizona.

June 15, 1992.

William S. Rose, American Continental Corp., Phoenix, Ariz., for debtors.

Oscar Acosta, Pasadena, Cal., Jeffrey Altman, Los Angeles, Cal., Robert G. Anderson, Jaburg & Wilk, P.C., Phoenix, Ariz., Mike D. Arnold, Gallatin, Mo., Michael L. Baker, McClure & Baker, Florence, Ky., Lucille Hino Baugham, Los Angeles, Cal., Richard S. Berger, Tuttle & Taylor, A Law Corp., Los Angeles, Cal., David L. Blender, Walleck, Shane, Stanard & Blender, Woodland Hills, Cal., June Adler, Northridge, Cal., Doug Amo, Pivo & Halbreich, Irvine, Cal., Rick Apicella, Law Dept., Shearson Lehman Bros., New York City, Brent Ayscough, Ayscough & Marar Attorneys at Law, Torrance, Cal., Gordon Baldwin, Orange, Cal., E. Michael Bayer, Northridge, Cal., Robert H. Berman, Horwitz & Cutler, Inc., Irvine, Cal.

Barry Blomquist, Blomquist & Espeset, Minneapolis, Minn., Lawrence E. Bookman,

Stell, Levine, Bookman & Weiss, Los Angeles, Cal., Richard D. Brady, Costa Mesa, Cal., Mark Branner, Sherman Oaks, Cal., Frank Brophy, Phoenix, Ariz., Lorne J. Brown, Pasadena, Cal., Russell Brown, San Diego, Cal., Paris D. Brunner, Santa Monica, Cal., Douglas L. Callister, Callister & Callister, Glendale, Cal., Lana Borsook, Broad, Schulz, Larsen & Wineberg, Los Angeles, Cal., Jeffrey Brandt, Edwards & Ashton, Glendale, Cal., Eric Bronc, S.K. Friedemann & Associates, Long Beach, Cal., Bruce A. Brown, Goldsmith, Thelin, Schiller & Brown, Aurora, Ill., Richard Brown, Newport Beach, Cal., Ron Brownson, Upland, Cal., Stephen M. Burgin, Latham & Watkins, Los Angeles, Cal., Charles H. Carter, Corona, Cal., Henry Casden, The Casden Co., Beverly Hills, Cal., Robert C. Chandler, Chandler, Stevens & Trone, Riverside, Cal., Stephen B. Clemmer, Cayer, Kilstofte & Craton, Long Beach, Cal., Jerome S. Cohen, Los Angeles, Cal., Knox M. Cologne III, Los Angeles, Cal., Barbara A. Cooper, Bellflower, Cal., Jeff Coyne, Coyne, Milner, Uriarte & Lorch, Pasadena, Cal., James O. Cripps, Hemet, Cal., Clifford Cate, Glendale, Cal., David Chapman, Pasadena, Cal., Michael Coates, Saxon, Dean, Mason, Brewer & Kincannon, Glendora, Cal., H. William Collins, San Diego, Cal., Wayne Condict, First American Trust Co., Santa Ana, Cal., Robert D. Coviello, Santa Ana, Cal., Steve Craycraft, Stewart & Irwin, Indianapolis, Ind., Bart Cromwell, Bower & Weiner, Orange, Cal., Milton Crystal, Syracuse, N.Y., Charles R. Curry, Santa Ana, Cal., Ruth Davey, Tucson, Ariz., David Dealey, Fogel, Dealey & McCall, Santa Monica, Cal., Steve A. Didio, Norcross, Ga., James Doak, Norwalk, Cal., Eugene E. Dunnington, Garden Grove, Cal., Lyn Duval, Bloom, Rodibaugh & Jeglin, Hemet, Cal., Charles Cummings, Los Angeles, Cal., Stephen Z. Cutler, Klein & Cutler, Long Beach, Cal., Joseph Davis, Santa Ana, Cal., Allan J. Demars, Spiegel & Demars, Chicago, Ill., Dean M. Dinner, Schult, Lazarus, French, Zwillinger & Smock, Phoenix, Ariz., Deborah Driggs, Sacks, Tierney, Kasen & Kerrick, Phoenix, Ariz., Kenneth B. Dusick, Los Angeles, Cal., Howard M. Ehrenberg, Sulmeyer, Kupetz, Baumann & Rothman, Los Angeles, Cal., Jonathan R. Ellowitz, Newport Beach, Cal., Ross H. Espeseth, Law Offices of La Roy Baird, P.C., Bismarck, N.D.

James C. Fedalen, Rhodes & Fedalen, Encino, Cal., Vin Alan Fichter, Encino, Cal., J. Patrick Fleming, Jr., Los Angeles, Cal., Steven Fox and John Laing, Mission Hills, Cal., Bruce J. Gary, Sikora & Price, Inc., Santa Ana, Cal., A.J. Ghirardelli, San Fernando, Cal., Victor Epport, Epport & Richman, Los Angeles, Cal., Patricia Fanelli, Office of U.S. Congressman Robert K. Dorman, Garden Grove, Cal., Carolyn M. Fergoda, Pasadena, Cal., Charles L. Firestein, Lehman, Roach, Bauman, Dobbs & Firestein, Phoenix, Ariz., Jan M. Flory, Fullerton, Cal., Dennis Fried, Rosenthal & Smith, Encino, Cal., Mark Mitchell Geyer, Geyer & Cohen, P.C., Encino, Cal., Philip H. Gillin, Century City, Cal., John J. Gottes, South Gate, Cal., Herbert Graham, Sherman Oaks, Cal., Frank Gumbinger, Corona Del Mar, Cal., David Hagen, Hagen, Hagen & Hagen, Encino, Cal., Erik Hartman, Long Beach, Cal., Ronald M. Hellewell, Salem, Or., Robert K. Hillison, Fresno, Cal., Robert Marc Hindin, Law Offices of Robert Marc Hindin, Los Angeles, Cal., Robert Gouth, Sandbower, Gabler & O'Shaughnessy, Baltimore, Mass., Richard L. Grant, Law Office of Richard Grant, Tustin, Cal., Nancy Ann Guthrie, Leroy B. Taft, Los Angeles, Cal., Christopher A. Hall, Long, Ragsdale & Waters, Knoxville, Tenn., Kenneth L. Harvey, Manhattan Beach, Cal., Mark Hiepler, Sedgwick, Detert, Moran & Arnold, Los Angeles, Cal., Robert M. Himrod, Los Angeles, Cal., Thomas J. Hindman, Orten & Hindman, P.C., Denver, Colo., Yance Hirschy, Temecula, Cal., Jeff Howard, Howard & Associates, Newport Beach, Cal., Minoru Inadomi, Santa Ana, Cal., Neal D. Jacobs, James A. Steele, Woodland Hills, Cal., David A. Joffe, Brandes, Lane & Joffe, P.C., Phoenix, Ariz., Arthur T. Jones, Jones and Jones, Glendale, Cal., Jayne T. Kaplan, Los Angeles, Cal., Peter Klika, Klike, Liau & McIntosh, Pasadena, Cal., Joseph Hitrec, Santa Ana, Cal., Stanley A. Hutchinson, Fountain Valley, Cal., Murray Jackson, Los Angeles, Cal., Michael W. Jaenish, Salt Lake City, Utah, Gail S. Johnson, Associate V.P., Asst. Gen. Counsel, Prudential Securities, New

York City, Stanley R. Jones, Layman, Jones & Dye, Irvine, Cal., Donn Kemble, Newport Beach, Cal., Kurt Kolar, Congressman Sensenbrenner, Washington, D.C., Kathryn Koorenny, Gibson, Dunn & Krutcher, Los Angeles, Cal., Elizabeth Kreitzer, Law Clerk, Law Offices of Mr. Williams, San Diego, Cal., Steven A. Kurowski, Marrillville, Ind.

Charles S. La Shelle, Austin, Tex., for National Western Life Ins. Co., Alfred J. Lakritz, Encino, Cal., James B. Lapin, Lapin & Herrick–Stare, P.C., Denver, Colo., Everett Laybourne, Baker & McKenzie, Los Angeles, Cal., Ronald K. Lipstone, Goldman, Gordon & Lipstone, Los Angeles, Cal., Jim Kosinski, Reno, Nev., Kenneth J. Kroopf, P.C., Monterey, Cal., Hiram W. Kwan, P.C., Los Angeles, Cal., Michael J. Lai, Bankers Trust Co., New York City, Ray Lapica, Lapica Law Corp., Riverside, Cal., Jeff Lauridson, Spray, Gould & Bowers, Tustin, Cal., Paul Lipman, Arter, Hadden, Lawler, Felix & Hall, Los Angeles, Cal., Chaim Magnum, Fountain Valley, Cal., Louis Magour, Los Angeles, Cal., Mel Markman, Tarzana, Cal., Scott H. McNutt, Severson & Werson, San Francisco, Cal., Jack Morgan, Morgan, Cheroski & Reamer, Torrance, Cal., Bruce Murdock, Law Offices of Bruce Murdock, Santa Rosa, Cal., David Nelson, Loeb & Loeb, Los Angeles, Cal., Roger Noorthoek, Southgate, Cal., Romon Oller, Santa Ana, Cal., David Margulies, Klonsky & Margulies, Woodland Hills, Cal., Bernard McNealy, Paralegal, Carson, Dann & Associates, Panorama City, Cal., Edward Montgomery, Pasadena, Cal., Geoffrey C. Mousseau, Los Angeles, Cal., Tom Musselman, Los Angeles, Cal., Donald J. Newman, Newman, Ahern, Chambliss & Banen, Phoenix, Ariz., Luis A. Ochoa, Deconcini McDonald Brammer Yetwin & Lacy, Tucson, Ariz., Jeff Osser, The Osser Law Offices, Beverly Hills, Cal., Karen Owens, Richmond & Richmond, Laguna Hills, Cal., John S. Parker, Fischbeck & Oberndorfer, La Mesa, Cal., Kenneth E. Peck, Denver, Colo., Paul A. Pereira, Thompson & Colegate, Riverside, Cal., Seymour Philips, Encino, Cal., David Pittman, Fullerton, Cal., Frank Ponce, Ponce & Corum, Hollywood, Cal., Dean Rallis, Baker & Hostetler, Los Angeles, Cal., Congressman Ron Packard, Carlsbad, Cal., Roger Patterson, Whittier, Cal., Martin K. Pelcin, Dixon, Howell, Westmoreland & Newman, Los Angeles, Cal., Ruth A. Phelps, Phelps Schwarz & Phelps, Pasadena, Cal., Alan Pitt, Pitt & Kraines, Beverly Hills, Cal., Michael Polk, Polk, Scheer & Prober, Tarzana, Cal., Alex Powell, Cornwell, Powell, Kearney & Hackette, Torrance, Cal., Judy Rasmussen, Madden, Jones & Cole, Long Beach, Cal., David M. Reaves, Ridenour, Swenson, Cleere & Evans, Phoenix, Ariz., Martin Refkin, Freeman, Freeman & Refkin, Woodland Hills, Cal., David E. Reynolds, Lewis, D'Amato, Brisbois & Bisgaard, Los Angeles, Cal., Mike Roberts, Lum, Roberts & Gutierrez, So. Pasadena, Cal., H. James Rosenberg, Law Offices of William H. Brownston, Studio City, Cal., Larry Rothman, Law Offices of Larry Rothman, Westminster, Cal., Dennis S. Roy, Brown, Wenfield & Canzoneri, Los Angeles, Cal., Paul Sala, Fennemore Craig, Phoenix, Ariz., John F. Reed, Los Angeles, Cal., Bernard Rethore, Daugherty, Alex & Tadano, Phoenix, Ariz., Randy Rhodes, Merrill Lynch, Los Angeles, Cal., Roger Rombro, Los Angeles, Cal., Richard Rosett, Los Angeles, Cal., Ken Rousch, Carlsbad, Cal., Michael D. Rubin, Rutan & Tucker, Costa Mesa, Cal., Marshall Sanders, Sanders, Firestein & Janeway, Encino, Cal., Joseph Sarfaty, Kurtzman & Sarfaty, Los Angeles, Cal., Walter Scott, W.B. Scott, Glendale, Cal., Richard Hudson Share, Frandzel & Share, Los Angeles, Cal., Ralph Sims, Law Offices of Brian N. Winn, Anaheim, Cal., Kaye Soloman, Sheppard Mullen, Los Angeles, Cal., Bruce Speiser, Los Angeles, Cal., Michael Steinberg, Los Angeles, Cal., Mark S. Stern, Stupar & Schuster, Milwaukee, Wis., Barry R. Schlom, Polston, Schwartz, Hamilton & Fenster, Beverly Hills, Cal., Kevin C. Sewell, Las Vegas, Nev., Randy Sherman, Newport Beach, Cal., Milon Smith, Smith & Hilclig, Torrance, Cal., Peter Sorenson, Sacks, Tierney, Kasen & Kerrick, Phoenix, Ariz., Chester C. Stauffacher, Sturgeon Bay, Wis., Creighton A. Stephens, Law Offices of Creighton A. Stephens, Agoura Hills, Cal., Bradley J. Stevens, O'Connor, Cavanaugh, Anderson, Westover, Killingsworth &

Beshears, Phoenix, Ariz., Alan Stomel, Los Angeles, Cal., Ken Suzuki, Los Angeles, Cal., Leroy B. Taft, P.C., Los Angeles, Cal., Alan G. Tippie, Sulmeyer, Kupetz, Baumann & Rothman, Los Angeles, Cal., Pat Torres, Montrose, Cal., Michael Udalf, Jersey City, N.J., Christine Upton, Volk, Newman, Gralla & Karp, Los Angeles, Cal., Jeff Venderveen, Laguna Hills, Cal., David Sutterfield, Effingham, Ill., Jack Swafford, Pasadena, Cal., Bob Terry, Long Beach, Cal., Arthur Toll, Toll & Toll Law Offices, Los Angeles, Cal., Lanny M. Tron, Tron & White, Pasadena, Cal., Robert Dean Upp, Solana Beach, Cal., Carl H. Urist, Depository Trust Co., New York City, Vin Victor, Encino, Cal., Howard E. Vleerick, Downey, Cal., Jim Wachs, Cincinnati, Ohio, Michael D. Warner, Robinson Diamant Brill & Klausner, Los Angeles, Cal., Carl J. West, Hahn & Hahn, Pasadena, Cal., Mike White, Encino, Cal., Steve Williams, San Francisco, Cal., James Wolf, Grey Law of Ventura County, Inc., Ventura, Cal., Gary Wynn, Law Offices of Gary Wynn, Big Bear Lake, Cal., Walter Wabby, Law Offices of McKarus & Wabby, Encino, Cal., Steven Wade, Wade, Covington & Crowe, Ontario, Cal., Dan Weintraub, Law Offices of James P. Del Gulrcio, Beverly Hills, Cal., Lester F. Whalley, Gardena, Cal., James A. Whitehill, Whitehill West, P.C., Tucson, Ariz., Robert T. Wilson, Jr., Wilson & King, Jasper, Ala., Charles W. Wolfe, Larwill and Wolfe, Los Angeles, Cal., V. Kelley York, York, Morrissey & Woo, Santa Ana, Cal., Rudolph E. Zigmund, Pasadena, Cal.

## ORDER

BILBY, Bankruptcy Judge.

### I.

Until April 13, 1989, American Continental Corporation ("ACC") engaged in financial services and real estate activities. On April 13, 1989, ACC filed a Petition under Chapter 11 of the United States Bankruptcy Code. On April 14, 1989 the Federal Home Loan Bank Board ("FHLBB") found that ACC's principal subsidiary, Lincoln Savings and Loan Association ("Lincoln"), was operating in an unsafe and unsound manner and appointed a conservator.

On June 2, 1989, the United States Trustee for the District of Arizona appointed a committee to represent the unsecured creditors of ACC. On August 5, 1989, and February 2, 1990, this court entered orders withdrawing from the Bankruptcy Court the reference of ACC's Chapter 11 case.

On or about July 18, 1990, the Official Unsecured Creditors Committee filed its proposed Plan of Reorganization. The Plan, which was confirmed by Order of December 16, 1990, created an ACC Liquidating Estate ("ACC" or "Estate"), to be managed by a chief executive officer under the direction of an Estate Steering Committee. Pursuant to Article 9 of the Plan, the Estate retained avoiding powers possessed by ACC under 11 U.S.C. § 547. In April 1991, the Estate filed 2,096 adversary proceedings against the recipients of alleged preferential payments pursuant to 11 U.S.C. §§ 547 and 550. ("Preference Litigation"). The majority of Preference Defendants had purchased ACC subordinated debentures through Lincoln Savings branches. The Preference Litigation involved three types of cases:

1. Adversary proceedings (1,130 cases) to recover principal and interest payments totalling $20,938,650;

2. Adversary proceedings (944 cases) to recover monthly interest payments totalling $2,293,236; and

3. Miscellaneous adversary proceedings (22) against undersecured creditors and recipients of "soils" payments totalling $1,565,768.

On July 17, 1991, this Court stayed the Preference Litigation pending a decision by the United States Supreme Court on the appeal of *In re ZZZZ Best Co., Inc.*, 921 F.2d 968 (9th Cir.1990). On December 11, 1991, the Supreme Court handed down its decision. *Union Bank v. Wolas*, —— U.S. ——, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991).

### II.

Former ACC chairman Charles H. Keating, Jr., and the failure of ACC/Lincoln, have become highly visible symbols of the breakdown of the savings and loan indus-

try. The collapse of ACC/Lincoln generated a flood of litigation, much of which was consolidated before this Court as *In re ACC/Lincoln Savings Securities Litigation*, MDL 834. Among the cases consolidated are class actions alleging violations of federal and state securities law, filed on behalf of approximately 20,000 purchasers of ACC securities. The class is defined as: "all persons who purchased securities, stock or debentures of ACC between January 1, 1986 and April 14, 1989." *Shields v. Keating*, CV 89–2052 SVW (C.D.Cal. December 28, 1989) (Order Re Class Certification).

To the extent Preference Defendants received payments of interest only, they are class members in the securities litigation. Those who were paid in full, having received payments of both principal and interest, have not been damaged and are not members of the class. If the Estate were to recapture the payments made within 90 days of its bankruptcy filing, however, those who disgorged payments would arguably be entitled to a recovery as are members of the class.

### III.

Section 547(b) of the Bankruptcy Code provides:

(b) except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor:

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enabled such creditor to receive more than such creditor would receive—

(A) if the case were a case under Chapter 7 of this Title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this Title.

Bankruptcy Code § 547(c)(2), known as the "ordinary course of business exception," excepts certain transfers from the estate's avoidance powers. It provides, in relevant part:

(c) The trustee may not avoid under this section a transfer—

(2) to the extent such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms;

11 U.S.C. § 547(c)(2).

In *Matter of CHG Intern., Inc.*, 897 F.2d 1479 (9th Cir.1990) the Ninth Circuit held that the § 547(c)(2) "ordinary course of business exception" did not encompass payments on long-term loans. The United States Supreme Court rejected this position in *Union Bank v. Wolas*. In *Wolas*, the debtor had borrowed $7 million from Union Bank on December 17, 1986, and filed a petition under Chapter 7 of the Bankruptcy Code in July 1987. During the preceding 90 days, the debtor had made two interest payments which the trustee of the debtor's estate sought to recover pursuant to § 547(b). The trustee argued that the ordinary course of business exception was limited to short-term trade credit, and urged that payments on long-term debt should be returned to the estate and distributed among all creditors. The Supreme Court disagreed, holding that the plain language of Section 547(c)(2) did not admit that interpretation:

But the statutory text—which makes no distinction between short-term debt and long-term debt—precludes an analysis that divorces the policy of favoring equal distribution from the policy of discouraging creditors from racing to the courthouse to dismember the debtor. Long-term creditors, as well as trade creditors,

may seek a head start in that race. Thus, even if we accept the court of appeals' conclusion that the availability of the ordinary business exception to long-term creditors does not directly further the policy of equal treatment, we must recognize it does further the policy of deterring the race to the courthouse ... whether Congress has wisely balanced the sometimes conflicting policies underlying § 547 is not a question that we are authorized to decide.

*Union Bank v. Wolas*, 112 S.Ct. at 533. The Court held: "payments on long-term debt, as well as payments on short-term debt, may qualify for the ordinary course of business exception to the trustee's power to avoid preferential transfers." *Id.*

### IV.

■ On April 7, 1992, this Court instructed the Estate to submit a brief outlining its position on the impact of *Wolas* on the Preference Litigation. The Court instructed the Estate to pay particular attention to the following issues:

Although the payments in question in *Wolas* were two interest payments and a loan commitment fee, the Supreme Court did not distinguish in its opinion between payments of interest on long-term debt, and payments of principal at date of maturity. Nor does the language of 11 U.S.C. § 547(c)(2) make this distinction. The ACC estate should therefore set forth the legal grounds supporting its position that *Wolas* does not preclude continuation of these preference actions against defendants who were paid both principal and interest.

In addition, the Court instructed the Estate to generally outline the evidence showing that:

(1) ACC incurred the debt represented by the bonds other than in the ordinary course of its business,

(2) ACC made payments of principal and interest other than at the usual times in the usual amounts under the terms of the bond, and/or that

(3) ACC made payments of principal other than at the time the bonds matured according to their terms and all principal was due in full.

*In re American Continental Corporation*, CV 89–1231 (D.Az. April 7, 1992) (Order re: Preference Litigation).

ACC offers no significant evidence that the *payments* were not made in the ordinary course or the business of either ACC or the Preference Defendants. ACC concedes that records indicate all payments made during the period of January 3, 1989 to March 30, 1989 were made in a timely fashion consistent with governing documents. The only exceptions were approximately $760,000 in payments on debt redemptions, revocation payments on an "arbitrary premature redemption in the amount of $100,000, based on a hardship letter regarding medical bills and infirmity." ACC Brief at p. 13–14.

Nor has the Estate offered any significant evidence to show the payments were made other than according to ordinary business terms. The Estate has not suggested it will produce any evidence which shows the Preference Defendants were paid because they initiated a race the courthouse, or as a result of any inclination to favor them over other creditors. ACC concedes the payments were made pursuant to the terms of the governing indentures.

Rather, ACC contends the *debt* was not incurred in the ordinary course of ACC's business, because it was ACC's business to defraud the bond purchasers. ACC argues the bond sales were part of an elaborate Ponzi scheme, in which proceeds from later bond sales were used to repay earlier purchasers. ACC stresses that former senior management of ACC has been indicted for securities fraud; Charles H. Keating, Jr. has been convicted of aiding and abetting the sale of fraudulent securities and has been sentenced to ten years imprisonment; and the alleged fraud at ACC/Lincoln is currently on trial in the securities litigation described earlier.

The Estate relies on Ninth Circuit case law which holds that the ordinary course of business exception is available only to legitimate businesses. *In re Bullion Reserve of North America*, 836 F.2d 1214 (9th Cir. 1988), *cert. denied*, 108 U.S. 2824, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988); *Graulty v.*

*Brooks, (Matter of Bishop, Baldwin, Rewald, Dillingham and Wong, Inc.,* 819 F.2d 214 (9th Cir.1987)). The Ninth Circuit has observed:

> In *Graulty,* we explained that Congress intended the ordinary course of business exception to apply only to transfers by legitimate business enterprises. (citation omitted.) We also noted that the Bankruptcy Code's purpose was not to protect one victim of a debtor's fraud at the expense of others.
>
> Our reasoning in *Graulty* applies here. [The debtor] was a fraudulent business of the type Congress did not intend to protect under § 547(c)(2). Moreover, it would be inequitable to allow [the preference defendant] to obtain a 100% recovery on his claim while relegating other defrauded program participants to general unsecured creditor status in [the] bankruptcy proceeding. Equity requires that all these creditors share equally in whatever assets are available.

*In re Bullion Reserve,* 836 F.2d at 1219.

This Court concludes, however, that the equities of this case require that the Preference Litigation not go forward. ACC's bonds were sold through the branches of Lincoln Savings. From the standpoint of these Preference Defendants, it had the outward appearance of a legitimate operation and in certain respects, it may have been.

Section 547(b) is designed to further two goals: to discourage creditors from racing to dismember already precarious debtors, and to ensure equality of distribution among creditors. In *Wolas,* the Supreme Court clearly rejected an attempt to read extraneous provisions into § 547(c)(2).[1] The Supreme Court instructed that Congress readjusted the balance of those two objectives in the 1978 Amendments to the Bankruptcy Code. The Court examined the pertinent legislative history, and concluded: "the text of § 547(c)(2) as enacted reflects the deliberate choice of Congress." *Wolas,* 112 S.Ct. at 532. The Court refused to second-guess whether, in the long run, Con-

gress had achieved a wise balance. *Id.* at 533.

Section 547 is not, on its face, an anti-fraud provision. There are independent laws to redress fraud. Moreover, to permit the Estate to recapture these payments will not advance the objective of deterring fraud. It would have no impact on management at all. Nor would it serve any theoretical goal of making investors more wary, for those who would benefit and those who would be penalized would depend entirely on chance.

Allowing this Preference Litigation to proceed would permit the expenditure of additional Estate resources for the exclusive purpose of ensuring equitable distribution. *Wolas* rejected the notion that § 547(c) is aimed exclusively at achieving equality of distribution. The result the Estate seeks would effectively put the burden on innocent third parties, who were fortunate enough to have been paid, to defend against alleged fraud at ACC. Although it is inequitable for certain creditors to retain their payments, while others go unpaid, it is far more inequitable to penalize those who were paid, for an alleged fraud that was not of their doing, and by which they may have already been substantially damaged.

Accordingly, it is the finding of this Court that these payments are entitled to the protection of the Section 547(c)(2) ordinary course of business exception. The Preference Litigation is hereby dismissed. The ACC Liquidating Estate shall return any sums paid as offers of settlement of this litigation.

■ It is further ordered as follows. Pursuant to Court Order at the outset of these proceedings, ACC paid filing fees to the Bankruptcy Court by providing $20,000 in cash and a promissory note for the balance, to be paid from the proceeds of the Preference Litigation. At that time, the law in the Ninth Circuit would arguably have permitted these actions to proceed. Because of the United States Supreme

---

**1.** Although the payments the *Wolas* trustee sought to avoid were interest payments, the Supreme Court's rationale would appear to apply equally to payments of principal. Section 547(c)(2) itself makes no distinction between principal and interest.

Court's intervening decision in *Union Bank v. Wolas*, this Court's interpretation of that decision, and the equities arising out of the facts and circumstances of this case, the Estate will not recoup the balance of the filing fees. In addition, the Estate has assumed responsibility for much of the record keeping and mailing during the pendency of these actions. Therefore, the Court concludes it is equitable to waive the balance of the filing fees.

IT IS SO ORDERED.

Based on and in consideration of the foregoing, IT IS ORDERED AND ADJUDGED that final judgment shall be entered in favor of the Preference Defendants. The ACC Estate shall serve this Order on all parties.