**In re SIERRA STEEL, INC., a Nevada corporation, Debtor.**

**SIERRA STEEL, INC., Appellant,**

v.

**S & S STEEL FABRICATION, a Utah corporation, Appellee.**

BAP No. NV–87–2248–PMoR.
Bankruptcy No. BK–R–84–00359.
Adv. No. 86–0081.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Oct. 20, 1988.

Decided Jan. 13, 1989.

---

John A. White, Jr., White Law Chartered, Reno, Nev., for appellant.

Janet L. Chubb, Janet L. Chubb & Associates, Reno, Nev., for appellee.

Before PERRIS, MOOREMAN and RUSSELL, Bankruptcy Judges.

## OPINION

PERRIS, Bankruptcy Judge.

Appellant/debtor-in-possession, Sierra Steel, Inc. ("debtor-in-possession") filed an adversary proceeding against appellee S & S Steel Fabrication ("appellee") seeking to avoid allegedly preferential transfers. The bankruptcy court granted appellee's Motion for Summary Judgment because it concluded that Sierra Steel, Inc. ("debtor") did not have any property interest in the sums transferred. We reverse and remand for further proceedings consistent with this opinion.

## FACTS

Walker Boudwin Construction Company, Inc. ("Walker Boudwin") was the general contractor for a construction project known as the Comstock Hotel and Casino Addition (the "Comstock Project"). On December 28, 1983, the debtor entered into a sub-contract agreement with Walker Boudwin. Debtor agreed that all moneys received under the sub-contract shall be first used for payment of labor, material, and services incurred in the performance of the agreement and that such moneys shall not be diverted to satisfy the debtor's obligations on other contracts.

Debtor agreed to buy from appellee $452,885 worth of material for the Comstock Project. In order to preserve its rights, appellee timely mailed to the owner and the general contractor a "Notice to Owners of Materials Supplied for Work or Services Performed." *See* NRS 108.245.

In the course of dealings among the parties, appellee would invoice debtor for material supplied to the Comstock Project. Debtor then incorporated appellee's invoices into its monthly bill to Walker Boudwin. Debtor would then pay appellee after Walker Boudwin paid it.

At issue in this proceeding are two payments made by debtor from its general account to appellee for material delivered to the Comstock Project. On March 8, 1984, debtor delivered a $71,107.220 check to appellee. On May 1, 1984, debtor made a wire transfer to appellee in the sum of $150,000.

On May 10, 1984, debtor filed a voluntary petition under Chapter 11. Debtor-in-possession and appellee continued to deal with each other and debtor-in-possession eventually satisfied its obligation to appellee for material supplied to the Comstock Project.

On May 9, 1986, debtor-in-possession filed a complaint to avoid the March 8 and May 1, 1984 [1] transfers pursuant to 11 U.S.C. § 547.[2] On August 27, 1987, appellee filed a motion for summary judgment, contending that the transferred property was not property of the debtor, as is required

---

**1.** Debtor-in-possession also attempted to set aside an additional transfer of $71,107.20 alleged to have occurred on April 28, 1984. The court below found that there was no evidence of this transfer and debtor-in-possession does not contest this determination on appeal.

**2.** All references are to the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, unless otherwise indicated.

under section 547(b), and that the transfers fell within the exception of section 547(c)(1)[3]. The bankruptcy court granted summary judgment, determining that the debtor had no property interest in the transferred money because it transferred the money only as a conduit for the general contractor. The bankruptcy court made no determination as to the section 547(c)(1) exception. Debtor-in-possession filed a timely notice of appeal from the bankruptcy court's Memorandum Decision Granting Motion for Summary Judgment.

## STANDARD OF REVIEW

■ Orders on motions for summary judgment are reviewed *de novo*. *In re Marvin Properties, Inc.*, 854 F.2d 1183, 1185 (9th Cir.1988).

## DISCUSSION

The issue in this appeal is whether the transfers of money from debtor's general account to appellee involved property of the debtor.[4] The bankruptcy court decided that the transferred funds were not property of the debtor because the debtor had no property rights in the sums at issue. Although the bankruptcy court's reasoning is not set forth, there are two possible bases for this decision: (1) that the debtor held the sums it received from Walker Boudwin in trust for appellee's benefit, or (2) that the debtor did not have an interest in the funds under the earmarking doctrine.

### A. *Application of the trust theory.*

■ In order for a transfer to be avoidable under section 547(b), the transfer must involve property of the debtor such that the transfer diminishes the fund from which similarly situated creditors may be

paid. *In re Western World Funding, Inc.*, 54 B.R. 470, 475 (Bankr.D.Nev.1985); *see In re Bullion Reserve of North America*, 836 F.2d 1214, 1217 (9th Cir.) *cert. denied* — U.S. —, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988). If a debtor holds property impressed with a valid trust, the debtor's estate generally holds such property subject to the beneficiary's interest. 4 *Collier on Bankruptcy* ¶ 541.13 (15th ed. 1988). Consequently, a distribution by a debtor-trustee to a beneficiary is not preferential because it is not a transfer of property of the debtor which causes diminution of the estate.

■ Generally, the existence and nature of the debtor's interest in property are determined by state law. *In re North American Coin & Currency, Ltd.*, 767 F.2d 1573, 1575 (9th Cir.1985) *cert. denied* 475 U.S. 1083, 106 S.Ct. 1462, 89 L.Ed.2d 719 (1986). State law, however, must be applied in a manner consistent with federal bankruptcy law. *Id.* "[B]ecause of countervailing policies behind the Bankruptcy [Code], state law [can]not be permitted to impose a trust on commingled property of a bankrupt's estate." *Id.*

■ Appellee concedes that debtor did not hold the funds it received from Walker Boudwin in an express trust for the benefit of appellee. Appellee also concedes that there was no wrongdoing on the part of the debtor sufficient to create a constructive trust in the traditional sense. Rather, appellee contends that the funds advanced by Walker Boudwin to the debtor are impressed with a "construction fund trust" for the purpose of insuring payment to those who hold valid claims for labor and/or materials. *See generally Bethlehem Steel Corp. v. Tidwell*, 66 B.R. 932

---

**3.** The other elements of a section 547(b) action and the other exceptions to avoidance under section 547 were not at issue in the court below and are not at issue on appeal.

**4.** Debtor-in-possession also contends on appeal that the transfer does not fall within the section 547(c)(1) exception. Because the section 547(c)(1) issue was not decided by the court below, we will not reach this issue. *See Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). At oral argument,

appellee placed great reliance on *In re E. R. Fegert, Inc.*, 88 B.R. 258 (9th Cir. BAP 1988) which held that otherwise preferential payments to subcontractors in exchange for the subcontractor's release of their unsecured claims against the debtor as well as their claims against the debtor's surety fell within the section 547(c)(1) exception. Because we do not decide whether the payments to appellee fall within the contemporaneous exchange exception, *Fegert* is not relevant to our analysis.

(M.D.Ga.1986). This "construction fund trust" can arise through express statutory provisions, *see e.g., Selby v. Ford Motor Co.*, 590 F.2d 642 (6th Cir.1979), or through the application of equitable principles and indirect statutory support, *see e.g., Bethlehem Steel Corp., supra.* In *Bethlehem Steel*, the court relied on state lien statutes similar to those at issue in finding such a trust.

Under Nevada law, there are no express statutory provisions creating a "construction fund trust". In addition, no Nevada authority supports the imposition of such a trust through equitable principles or indirect statutory support as in *Bethlehem Steel.*

■ Even if a "construction fund trust" existed under Nevada law, a laborer/materialman is only entitled to funds under a trust if it can prove that the money it received or claims can be traced to funds paid to the subcontractor by the contractor.[5] *See e.g., Elliott v. Bumb*, 356 F.2d 749 (9th Cir.) *cert. denied* 385 U.S. 829, 87 S.Ct. 67, 17 L.Ed.2d 66 (1966); *In re Uhlmeyer*, 67 B.R. 977, 981 (Bankr.D.Ariz. 1986); *Western World Funding*, 54 B.R. at 475; *see Bullion Reserve*, 836 F.2d at 1218. *Selby v. Ford Motor Co.*, 590 F.2d at 649, and *Bethlehem Steel*, 66 B.R. at 941, upon which appellee relies, both note that the trust property must be traceable. In fact, virtually all of the cases cited by appellee involve situations where tracing occurred or was not a problem because the transfer at issue involved either a direct payment by the contractor to the supplier, *e.g., In re Flooring Concepts, Inc.*, 37 B.R. 957 (9th Cir. BAP 1984) or a joint check issued to the debtor and the supplier which the debtor endorsed over to the supplier, *e.g., Jackson v. Flohr*, 227 F.2d 607 (9th Cir.1955) *cert. denied* 350 U.S. 947, 76 S.Ct. 322, 100 L.Ed. 826 (1956). In *Bethlehem Steel*, the money was traced through the application of the lowest intermediate balance rule. 66 B.R. at 942.

Appellee did not present any evidence to trace the funds it received from the debtor to any funds received by the debtor from Walker Boudwin. In its brief, debtor states that the money it received from Walker Boudwin was deposited in its general account along with the money it received from other jobs. The payments to appellee were made out of this general account. There is no evidence, however, that the money received by appellee can be traced to any payments made by Walker Boudwin. For this reason, the "construction fund trust" theory does not support the bankruptcy court's determination.

### B. *Application of the Earmarking Doctrine.*

■ Under the earmarking doctrine, when a third party advances or loans funds to the debtor with instructions to use the funds to pay off another creditor, the funds are said to be earmarked for payment to a specific creditor or creditors and do not become property of the debtor. *E.g., In re Van Huffel Tube Corp.*, 74 B.R. 579, 585 (Bankr.N.D.Ohio 1987).

■ Even if the earmarking doctrine is applicable[6], it does not support a determi-

---

5. Requiring the trust proponent to trace the funds would appear to be at odds with the general rule that the trustee bears the burden of proving that the transfer involves property of the estate. However, in *Bullion Reserve*, the court indicated that money paid from a commingled bank account under debtor's control was presumptively property of the debtor and the burden was then on the transferee to trace the money as trust assets. 836 F.2d at 1217 n. 3. In this case, the money is presumptively the debtor's property because it came from the debtor's general account. The burden is shifted to appellee to show that the money is not the debtor's property by tracing it to trust assets.

6. The earmarking doctrine was developed in cases where a third party loans money to the debtor for payment to another creditor and the effect of the transfer, therefore, was merely to substitute one creditor for another. *See e.g., Grubb v. General Contract Purchase Corp.*, 94 F.2d 70 (2d Cir.1938). In such a situation, the transfer would not diminish the estate. *Id.; see Van Huffel Tube Corp.*, 74 B.R. at 585. Given the theory underlying the development of the earmarking doctrine, it is doubtful that it is applicable in this case where there was no loan from a third party to the debtor and there was no substitution of creditors. *See generally In re Bohlen Enterprises*, 859 F.2d 561 (8th Cir.1988).

nation that the transferred funds were not property of the debtor because, appellee has not traced the funds to money received by the debtor from Walker Boudwin. Although cases applying the earmarking doctrine do not expressly state that a defendant was required to trace the earmarked funds, tracing is generally not an issue in those cases as the property is readily identifiable. *See e.g., Coral Petroleum, Inc. v. Banque Paribas–London,* 797 F.2d 1351, *reh'g denied* 801 F.2d 398 (5th Cir.1986). Policy reasons support a tracing requirement as a prerequisite to application of the earmarking doctrine. In a situation such as this, where the debtor deposits the funds into its general account, in the absence of a tracing requirement, any creditor who could prove that it was the intended beneficiary of a loan or a payment by a third party to the debtor could retain a preferential payment out of the debtor's general account notwithstanding the fact that such transfer would deplete the assets available for similarly situated creditors. Such a result would violate the Code's principle of ratable distribution because one group of creditors, the intended beneficiaries, would be insulated from the trustee's preference avoidance power even if they were not the actual beneficiaries of the funds transferred to the debtor for their benefit. Therefore, in the absence of tracing, the earmarking doctrine cannot be applied as a defense to a preference action.

## CONCLUSION

The bankruptcy court erred as a matter of law by not requiring appellee to trace the payments it received from the debtor to funds paid debtor by Walker Boudwin as a prerequisite to finding that the payments were not made from property of the estate. Accordingly, we reverse and remand so the bankruptcy court can determine if appellee has met its burden of tracing, and if not, whether section 547(c)(1) affords a defense to the debtor-in-possession's preference action.