# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: ADBOX, INC.,

*Debtor,*

DONALD I. METCALF, an individual;
JANET M. METCALF, an individual,

*Appellants,*

v.

JEFFREY I. GOLDEN, Chapter 7
Trustee, in his capacity as Chapter
7 Trustee for the Estate of Adbox,
Inc.,

*Appellee.*

No. 05-55158

D.C. No.
CV-04-00686-LGB

OPINION

Appeal from the United States District Court
for the Central District of California
Lourdes G. Baird, District Judge, Presiding

Argued and Submitted
March 8, 2007—Pasadena, California

Filed June 4, 2007

Before: Pamela Ann Rymer, Kim McLane Wardlaw, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

6673

## COUNSEL

James A. Shalvoy, Manhattan Beach, California, for the defendant-appellants.

Kathleen M. Goldberg, The Law Office of Thomas H. Casey, Inc., Rancho Santa Margarita, California, for the plaintiff-appellee.

## OPINION

MILAN D. SMITH, JR., Circuit Judge:

Appellants Donald and Janet Metcalf were the primary financial backers of a start-up company named Adbox, Inc. In 1998, the Metcalfs agreed to sell their interest in Adbox to Christer Wernerdal, but Wernerdal soon failed to make payments required by the sales agreements. Wernerdal brought a lawsuit against the Metcalfs and later took Adbox into bankruptcy. The bankruptcy trustee initiated a preference action to recover a $21,035.58 payment from Adbox to the Metcalfs, and the Metcalfs filed a counterclaim against the trustee. The Metcalfs argued that the counterclaim was against a proper "opposing party" and that the disputed funds they received were "earmarked" and therefore not part of the bankruptcy estate. The Metcalfs appeal the district court's affirmance of the bankruptcy court's dismissal of the counterclaim and its grant of summary judgment to the trustee in the preference action. We affirm.

## FACTS AND PRIOR PROCEEDINGS

The Metcalfs and Wernerdal formed Adbox in 1992. The Metcalfs agreed to pay the company's expenses until it became self-sufficient, and Wernerdal agreed to run the business as a salaried employee. The Metcalfs and Wernerdal jointly operated the business under this arrangement until 1998, when they decided to separate. The parties agreed that Wernerdal would become the sole owner of Adbox and that the Metcalfs would receive $315,139.36—$200,000.00 as the purchase price for their interest in Adbox, and $115,139.36 for the performance of certain consulting services.

Wernerdal then took control of Adbox, but instead of paying the Metcalfs the full amount due under their agreements, Wernerdal and Adbox sued the Metcalfs in Los Angeles Superior Court alleging usury and seeking a declaratory judgment that the consulting agreement was unenforceable. After a two-week bench trial, the court found that the consulting agreement was valid and enforceable, but that it only entitled the Metcalfs to $97,476.36, rather than the $115,139.36 originally claimed. The court also found unenforceable the provision of the agreement entitling the Metcalfs to attorney's fees as the "prevailing party" in the litigation. Wernerdal paid the Metcalfs the $200,000.00 purchase price during the course of the litigation, and Adbox paid the required $97,476.36 after the trial court's ruling. All parties appealed.

In May 2002, the state appellate court reversed the trial court on the amount due—requiring Adbox to pay the full $115,139.36 originally claimed—found the attorney's fees provision enforceable, and remanded for a determination of fees and costs. On remand, the trial court ordered Adbox to pay the Metcalfs $612,684.00 in attorney's fees and costs.

Adbox did not have sufficient funds to pay the difference between the original and modified judgment—$21,035.58 with interest—or to pay the attorney's fees owed. About that

time, Wernerdal sought an $18,000.00 loan from Ulf Ernetoft of Accenta Display Corporation, a Canadian company interested in Adbox's business. Accenta agreed to make the requested loan and deposited $18,000.00 in Wernerdal's personal account on June 24, 2002. Two days later, Robin Whitburn—Wernerdal's wife—deposited the $18,000.00 in Adbox's general account. Also on June 26, 2002, Accenta made a separate payment of $19,500.00 to Adbox.

On June 28, 2002, Adbox paid its court-determined debt to the Metcalfs in a series of transactions. Specifically, it wired $21,035.58 (the precise amount outstanding under the consulting agreement) to its attorney who, in turn, sent the same amount to the Metcalfs along with a letter explaining that the money was in satisfaction of the "decision of the court of appeals, including the amount of $17,663.00, plus interest." Adbox did not, however, pay the attorney's fees award.

On September 6, 2002—less than 90 days after the $21,035.58 payment to the Metcalfs—Wernerdal caused Adbox to file for bankruptcy under Chapter 7 of the Bankruptcy Code in the Central District of California. Appellee Jeffrey I. Golden was appointed trustee of the Adbox bankruptcy estate. In his capacity as trustee, Golden filed a preference action under 11 U.S.C. §§ 547 and 550(a)(1) to recover the $21,035.58 that Adbox had paid to the Metcalfs. In response, the Metcalfs filed a counterclaim against Golden alleging that Adbox's conduct prior to filing for bankruptcy constituted tortious interference with prospective economic advantage, violation of California Civil Code § 3439, and conspiracy to do so. Golden moved to dismiss the counterclaim and later moved for summary judgment in the preference action. After a hearing on Golden's motion to dismiss the counterclaim, the bankruptcy court construed it as a motion for summary judgment and granted it. After a separate hearing on Golden's motion for summary judgment in the preference action, the bankruptcy court granted that motion as well.

The Metcalfs appealed to the district court, and the district court affirmed both rulings. The Metcalfs timely appeal.

## JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction over the appeal from the bankruptcy court under 28 U.S.C. § 158(a). We have jurisdiction under 28 U.S.C. §§ 158(d) and 1291.

We review the district court's decision on appeal from a bankruptcy court de novo, giving no deference to the district judge's determinations. *In re Onecast Media, Inc.*, 439 F.3d 558, 561 (9th Cir. 2006). We review the bankruptcy court's grant of a motion to dismiss de novo. *In re Hemmeter*, 242 F.3d 1186, 1189 (9th Cir. 2001). We likewise review the grant of a summary judgment de novo. *In re Betacom of Phoenix, Inc.*, 240 F.3d 823, 827-28 (9th Cir. 2001).

## DISCUSSION

### I.  Dismissal of the Counterclaim

**[1]** Federal Rule of Bankruptcy Procedure 7013 and Federal Rule of Civil Procedure 13 govern the propriety of counterclaims in a bankruptcy context. According to Rule 7013:

> Rule 13 . . . applies in adversary proceedings, except that a party sued by a trustee or debtor in possession need not state as a counterclaim any claim that the party has against the debtor, the debtor's property, or the estate, unless the claim arose after the entry of an order for relief.

A counterclaim under Rule 13 must be against an "opposing party." Fed. R. Civ. P. 13(a), (b). Thus, a party sued by a trustee may assert a counterclaim against that trustee, but only if the trustee is an "opposing party" within the meaning of Rule 13.

**[2]** It is well-established that when a party sues in his representative capacity, he is not subject to counterclaims against him in his individual capacity. *See Pioche Mines Consol., Inc. v. Fidelity-Philadelphia Trust Co.*, 206 F.2d 336, 337 (9th Cir.), *cert. denied*, 346 U.S. 899 (1953) (recognizing the "rule that a counterclaim against a trustee in his individual capacity, where he has sued as a fiduciary only, is not permissible inasmuch as it is not a counterclaim against an 'opposing party,' as contemplated by Rule 13"); *see also* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1404 (2d ed. 1990); *cf. Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 543 n.6 (1986) ("Acts performed by the same person in two different capacities are generally treated as the transactions of two different legal personages." (quoting F. James & G. Hazard, Civil Procedure § 11.6 (3d ed. 1985) (internal quotation marks omitted))).

**[3]** The question presented here, however, is whether the trustee is an "opposing party" when he has brought a preference action that belongs to the bankruptcy estate and not to the debtor, but the counterclaim alleges causes of action that could have been brought against the debtor prior to its bankruptcy filing. We hold that he is not. The Metcalfs styled their counterclaim as against Golden "in his capacity as Chapter 7 trustee for the estate of Adbox," but their allegations concerned the conduct of Wernerdal and Adbox prior to Adbox's bankruptcy filing. While the Metcalfs presumably sought to recover from Adbox's assets in bankruptcy, the trustee would have to stand in the shoes of the debtor to defend against the counterclaim. This would be a representative capacity different from the representative capacity in which a trustee brings a preference action, because a preference action belongs specifically to the bankruptcy trustee and could not have been brought by the debtor prior to its bankruptcy filing. Moreover, if the Metcalfs' allegations are correct, and Adbox did transfer assets in order to shield them from its creditors, then it was the trustee's duty to represent the interests of all creditors to the Adbox estate (including the Metcalfs' interest) by recover-

ing those assets through a fraudulent transfer action under 11 U.S.C. § 548. In his § 547 preference action, however, the trustee was not representing all of the creditors' interests, but rather the interests of all of the creditors other than the Metcalfs. Therefore, under the allegations of the Metcalfs' counterclaim, the trustee was not an "opposing party" within the meaning of Rule 13 and the counterclaim was properly dismissed.[1]

## II.   The Motion for Summary Judgment in the Preference Action

[4] Under 11 U.S.C. § 547 the bankruptcy trustee may recover certain transfers made by the debtor within 90 days before filing for bankruptcy, if the trustee proves:

(1)   a transfer of an interest of the debtor in property;

(2)   to or for the benefit of a creditor;

(3)   for or on account of an antecedent debt;

(4)   made while the debtor was insolvent;

(5)   made on or within 90 days before the date of the filing of the petition; and

(6)   one that enables the creditor to receive more than such creditor would receive in a Chapter 7 liquidation of the estate.

---

[1]We do not foreclose the possibility that under different circumstances, Rule 7013 might permit a creditor to bypass the proof of claim process provided by 11 U.S.C. §§ 501-02 and Rule 3001 via a counterclaim, but in this case the district court correctly affirmed the bankruptcy court's dismissal of the counterclaim for failure to satisfy the "opposing party" requirement of Rule 13. *See* Collier on Bankruptcy § 7013.03 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2006).

*In re Superior Stamp & Coin Co., Inc.*, 223 F.3d 1004, 1007 (9th Cir. 2000) (citing 11 U.S.C. § 547(b)). Such a transfer is known as an "avoidable preference" or a "preferential transfer." *Id.* at 1007-09. The "earmarking doctrine" is a court-made exception to this rule that applies when a third party advances funds to the debtor subject to an agreement requiring the debtor to use the funds to pay off another creditor. *Id.*; *In re Sierra Steel, Inc.*, 96 B.R. 271, 274 (B.A.P. 9th Cir. 1989). In such circumstances, the funds are deemed "earmarked" and are not considered part the debtor's estate. *Sierra Steel*, 96 B.R. at 274.

## A. Waiver of an Earmarking Defense

**[5]** The trustee argues that the Metcalfs waived their earmarking defense entirely by failing to plead it as an affirmative defense in their answer to the preference action complaint. Federal Rule of Civil Procedure 8(a) and (c) provide that a defendant's failure to raise an "affirmative defense" in his answer effects a waiver of that defense. *See Morrison v. Mahoney*, 399 F.3d 1042, 1046 (9th Cir. 2005); 5 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1278 (2d ed. 1990). It is not well-settled, however, whether earmarking is an affirmative defense and therefore waived if not pled in the answer. We have not directly addressed the issue and out-of-circuit cases reach contrary conclusions. *Compare In re Winstar Comm'ns., Inc.*, 348 B.R. 234, 273 (Bankr. D. Del. 2005) (earmarking is an affirmative defense and waived because not pled in the answer), *with In re Libby Int'l., Inc.*, 247 B.R. 463, 467 (B.A.P. 8th Cir. 2000) ("The earmarking doctrine is not strictly an affirmative defense under Section 547(c)," but rather "is derived from an element of the plaintiff's proof . . . ." ), *and In re Int'l Ventures, Inc.*, 207 B.R. 618, 620 (Bankr. E.D. Ark. 1997) ("[T]he earmarking doctrine is not required to be pleaded as an affirmative defense since it is an element of the plaintiff's proof rather than an affirmative defense.") (citations omitted).

**[6]** The reasoning of the Eighth Circuit's Bankruptcy Appellate Panel in *Libby International* is persuasive, and we adopt it here. Earmarking is not one of the affirmative defenses enumerated in Rule 8, and we decline to construe it as such under Rule 8's residuary clause for "any other matter constituting an avoidance or affirmative defense."**[2]** Properly understood, the earmarking doctrine is not an affirmative defense under Rule 8, but rather a challenge to the trustee's claim that particular funds are part of the bankruptcy estate under 11 U.S.C. § 547. *See Libby Int'l.*, 247 B.R. at 467. Thus, the Metcalfs did not waive their earmarking defense by failing to plead it in their answer in the preference action.

## B. The Burden of Proof for an Earmarking Defense

**[7]** As the district court noted, there is "substantial confusion" over who bears the burden of proof on an earmarking defense. The Ninth Circuit Bankruptcy Appellate Panel addressed this question in *Sierra Steel*, where it denied an earmarking defense because the defendant "ha[d] not traced the funds to money received by the debtor from [the lender]." 96 B.R. at 275. While the *Sierra Steel* court started from the general principal that the trustee has the burden of establishing that property is part of the bankruptcy estate, it also noted that the funds in question were disbursed from the defendant's general account. *Id*. at 274 n.5. The source of the funds raised the presumption that the funds were property of the bankruptcy estate and the burden of proof accordingly shifted from the trustee—to establish that the funds were part of the estate

---

**[2]**Rule 8 lists the following as "affirmative defenses" that are waived if not pled in the answer:

> accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, [and] waiver.

Fed. R. Civ. P. 8(c).

—to the defendant—to show that they were not. *Id*. (citing *In re Bullion Reserve of N. Am.*, 836 F.2d 1214, 1217 n.3 (9th Cir. 1988)).**³**

**[8]** We follow well-established law in holding that the trustee bears the initial burden of establishing that a transfer is an avoidable preference under § 547. *See Sierra Steel*, 96 B.R. at 274. If, however, the trustee establishes that the transfer of the disputed funds was from one of the debtor's accounts over which the debtor ordinarily exercised total control, we follow the approach of *Sierra Steel* and find that the trustee makes a preliminary showing of an avoidable transfer "of an interest of the debtor" under § 547(b). The burden then shifts to the defendant in the preference action to show that the funds were earmarked.

**[9]** In the present case, the Metcalfs assert an earmarking defense regarding funds first deposited in Adbox's general account and then disbursed to the Metcalfs. Accordingly, while Adbox bore the initial burden of proving that the funds were part of the bankruptcy estate, that burden shifted to the Metcalfs when the funds were deposited into Adbox's general account.

---

**³**After *Sierra Steel*, the Ninth Circuit Bankruptcy Appellate Panel made passing reference to this issue again in *In re Lee*, where it noted that "[i]f [the defendant] were asserting an earmarking defense, it failed to meet its burden to present evidence on such a theory." 179 B.R. 149, 156 n.3 (B.A.P. 9th Cir. 1995) (citing *Sierra Steel*, 96 B.R. at 274-75). While we acknowledge that *In re Lee* may be read to suggest that the defendant always bears the initial burden of proof in an earmarking defense, we do not believe such a reading is proper. *In re Lee* addressed earmarking only as a hypothetical, and moreover, its statement only suggests that the defendant *in that case* would have had the burden of proof on an earmarking defense, not that all defendants always have it. We read *In re Lee* to be entirely consistent with *Sierra Steel* and the law of this circuit, as described above.

## C.   Merits of the Motion for Summary Judgment

**[10]** We now turn to the merits of the motion for summary judgment in the preference action. The earmarking doctrine applies "when a third party lends money to a debtor for the specific purpose of paying a selected creditor." *Superior Stamp*, 223 F.3d at 1008 (quoting *In re Kemp Pac. Fisheries, Inc.*, 16 F.3d 313, 316 (9th Cir. 1994)). In *Superior Stamp*, we identified the key question for the applicability of earmarking: "whether the debtor had the right to disburse the funds to whomever it wished, or whether their disbursement was limited to a particular creditor or creditors under the agreement with the new creditor." *Id*. at 1009.

**[11]** Under *Superior Stamp*, the Metcalfs' claim fails because they have not raised a genuine issue as to whether the lender (Accenta/Ernetoft) and debtor (Adbox/Wernerdal) agreed that the loan must be used to pay the antecedent debt to the Metcalfs. Because the loaned funds traced to Adbox's general account, the burden to establishing earmarking shifted to the Metcalfs, and the Metcalfs admit that there is no direct evidence of any agreement with the lender requiring that the funds be used to satisfy the debt to them.

**[12]** The Metcalfs argue, however, that the existence of such an agreement may be inferred from the surrounding factual circumstances. In support of this assertion, the Metcalfs cite Ernetoft's testimony that "Christer [Wernerdal] came to me and he needed . . . some money. I think it was for paying Mr. Metcalf," that Adbox needed the loan because "they had this [sic] $22,000 as they said they will use to pay off Mr. Metcalf," and that it was his understanding that Whitburn used the loan proceeds "to pay the amount that was owing [sic] to Mr. Metcalf." However, the Metcalfs identify no evidence that the loan was in any way conditioned on its being used to pay the debt to them; no direct evidence of any agreement between Ernetoft, Wernerdal, or Whitburn that the funds be so used; and no evidence that Wernerdal's (and Adbox's)

use of and control over the funds was in any way constrained. Because the Metcalfs bore the burden of proof on their earmarking defense, it was their burden at the summary judgment stage to identify "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). The Metcalfs have not met this burden, and the district court properly affirmed the grant of summary judgment in the trustee's favor.

## CONCLUSION

For the foregoing reasons, we affirm the district court's affirmance of the bankruptcy court's (a) dismissal of the counterclaim and (b) its grant of summary judgment in favor of the trustee in the preference action.

**AFFIRMED**.