# FILED

NOT FOR PUBLICATION

APR 11 2013

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. EC-12-1379-DJuMk |
| FRANCISCO LUJAN GARCIA and LIDUVINA GARCIA GARCIA, | Bk. No. 08-14334 |
| Debtors. | Adv. No. 09-01104 |
| J. TONY SERRA, | |
| Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| JAMES E. SALVEN, Chapter 7 Trustee, | |
| Appellee. | |

Submitted without Oral Argument
on March 22, 2013

Filed - April 11, 2013

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable W. Richard Lee, Bankruptcy Judge, Presiding

Appearances:    Appellant J. Tony Serra, pro se, on brief; Trudi G. Manfredo, Esq. on brief for Appellee.

Before:  DUNN, JURY and MARKELL, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Shortly before filing their chapter 7 bankruptcy petition, Francisco Lujan and Liduvina Garcia Garcia ("debtors") paid appellant, J. Tony Serra ("Serra"), in advance for his representation of their son in a criminal case.[2] The chapter 7 trustee ("Trustee") initiated an adversary proceeding against Serra seeking to avoid the payment as a fraudulent transfer under § 548(a)(1)(B). The bankruptcy court ruled in the Trustee's favor, finding that he met his burden of proof under § 548(a)(1)(B).

On appeal, Serra challenges only the bankruptcy court's determinations as to whether the funds used to pay him were the debtors' property and whether the debtors received "reasonably equivalent value" for the transfer to Serra. We AFFIRM.

## FACTS[3]

On May 1, 2008, the debtors' son, Miguel Angel Garcia, was booked into Madera County jail on an attempted murder charge. On May 15, 2008, the debtors paid $30,000 ("funds") to Serra, an experienced criminal attorney, on their son's behalf to represent him in the criminal case. The debtors paid Serra by personal

---

[2] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[3] We have taken most of the facts from the memorandum decisions of the bankruptcy court and the district court.

check from their joint bank account ("transfer").[4]  Serra cashed the check the next day.  He later acknowledged in a letter, dated August 28, 2008, that he received the check from the debtors ("receipt letter").

The debtors filed their chapter 7 bankruptcy petition on July 22, 2008.  They did not disclose the transfer in their statement of financial affairs ("SOFA") or their schedules.

The debtors later amended their SOFA to disclose the transfer ("amended SOFA").  They listed the transfer date as May 16, 2008, and Serra as the transferee.  They also stated the following:

> Debtors' son, Miguel Angel Garcia, was charged with a crime.  Friends and family entrusted Debtors with approximately $29,000.00 to pay criminal defense attorney, J. Tony Serra, on son's behalf.
>
> Approx. $1,000.00 was transferred from son, Miguel Angel Garcia, to debtors, to also pay attorney J. Tony Serra.
>
> Total for attorney fees was $30,000.  NO VALUE RECEIVED.

Notably, the debtors did not amend their schedules to list as creditors the friends and family members who allegedly contributed portions of the funds.

The Trustee is the duly appointed trustee in the debtors' chapter 7 case.  He initiated an adversary proceeding against Serra by filing a complaint to avoid the transfer under

---

[4] Both of the debtors' names appeared on the check, along with their home address.

§§ 548 and 550[5] and to order Serra to turn over the transfer under § 542 ("complaint").[6] Representing himself, Serra answered the complaint with a general denial.

The Trustee later moved for summary judgment ("summary judgment motion"). He argued that no genuine issues of material fact existed because all of the elements to avoid the transfer under §§ 548 and 550 had been met. To buttress his summary judgment arguments, the Trustee pointed out that he sent Serra a request for admissions ("admissions request"). In the admissions request, he asked Serra to confirm the check's authenticity, the date and the amount of the transfer and the purpose of the transfer. The Trustee contended that the admissions request was deemed admitted when Serra failed to respond.

Serra did not answer the summary judgment motion but instead filed his own motion for summary judgment ("cross-motion"), asserting two affirmative defenses. First, he contended that the good faith exception under § 550(b)(1) applied.[7] Second, Serra argued that the debtors did receive reasonably equivalent value for the transfer in the form of their son's love, satisfaction

---

[5] In the complaint, the Trustee did not cite the specific subsection of § 548 under which he sought to avoid the transfer. He did enumerate, however, all of the elements under § 548(a)(1)(B).

[6] The Trustee originally sought to avoid the transfer under §§ 544, 548 and 550. But in his summary judgment motion, he sought to avoid the transfer under §§ 548 and 550 only.

[7] Under § 550(b)(1), a trustee cannot recover from a secondary or subsequent transferee any funds taken by such transferee in good faith and without knowledge of the voidability of the transfer to the initial transferee.

4

that they performed their moral and familial duties, and a "heightened self-esteem" brought about by increased respect from family and friends for their sacrifice.

The Trustee opposed the cross-motion, contending that the good faith exception under § 550(b)(1) did not apply because Serra was the initial transferee. He also pointed out various procedural defects, including Serra's failure to provide a statement of undisputed facts and to serve a notice of hearing with the cross-motion.

On November 18, 2009, the bankruptcy court held a hearing on the summary judgment motion and cross-motion ("summary judgment hearing").[8] Serra did not appear personally at the summary judgment hearing, but had another non-bankruptcy attorney appear on his behalf.[9] Serra's attorney requested that the bankruptcy court continue the summary judgment hearing to allow Serra to find a bankruptcy attorney and to file a response to the summary judgment motion. Tr. of November 18, 2009 hr'g, 6:19-23, 7:23-25. The bankruptcy court denied Serra's request for a continuance of the summary judgment hearing. Tr. of November 18, 2009, 8:17.

---

[8] Neither the Trustee nor Serra provided a copy of the transcript of the summary judgment hearing. We reviewed a copy from the bankruptcy court's electronic adversary proceeding docket. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989)(the BAP may take judicial notice of underlying bankruptcy records).

[9] Serra initially represented himself but later had two non-bankruptcy attorneys represent him. The bankruptcy court repeatedly advised Serra over the course of the adversary proceeding that he needed a bankruptcy attorney to represent him.

5

The bankruptcy court also denied the cross-motion "as being in improper form and not supported by evidence." Tr. of November 18, 2009 hr'g, 4:21-23. It further noted that the cross-motion had not been served with a notice of hearing. Tr. of November 18, 2009 hr'g, 4:23.

The bankruptcy court went on to grant the Trustee's summary judgment motion concluding that no triable issues of material fact existed. It determined that the debtors made the transfer two months prepetition. The bankruptcy court also determined that the debtors did not receive consideration for the transfer, i.e., that they did not "receive[] anything in return that enhanced the bankruptcy estate." Tr. of November 18, 2009 hr'g, 8:24-25. It acknowledged that though the debtors "were trying in good faith to help their son . . . the measure of consideration here [under § 548 was] not good will and good feelings . . . it [was] whether the estate received anything back of value that could be used to pay creditors." Tr. of November 18, 2009 hr'g, 9:11-16. It also determined that the debtors were insolvent at the time they made the transfer: that there was "substantially more debt when they filed bankruptcy than they have assets and no evidence of anything that would cause the decrease in the assets in the two months prior to the filing of the bankruptcy." Tr. of November 18, 2009 hr'g, 9:4-7.

Serra appealed to the district court, which affirmed the bankruptcy court on all but one of its determinations. The district court found that the bankruptcy court did not rule on the issue of whether the funds were the debtors' property. The district court concluded that it was unclear "whether the

6

[Trustee] established this element pursuant to summary judgment standards, and whether the bankruptcy court considered the evidence in the record." Order on Bankruptcy Appeal, 17:7-9. The district court remanded that single issue to the bankruptcy court for its determination.

The bankruptcy court held a trial on the remanded issue on June 1, 2012. Two days before the trial, Serra filed a document titled, "Defendant's Submission." In it, he advised the bankruptcy court that he waived both his appearance at and participation in the trial.[10]

Counsel for the Trustee appeared at the trial, but Serra did not. At the outset of the trial, the bankruptcy court noted that Serra had waived his appearance at and participation in the trial. Tr. of June 1, 2012 hr'g, 3:13-22.

The Trustee's counsel requested that the bankruptcy court enter all of the Trustee's exhibits as evidence, including copies of the check, the receipt letter and the debtors' bankruptcy schedules. Tr. of June 1, 2012 hr'g, 4:9-20. The bankruptcy court admitted all of the exhibits into evidence with no opposition from Serra. Tr. of June 1, 2012 hr'g, 4:19-20.

At the close of argument, the bankruptcy court pointed out that Serra did not provide any evidence regarding the contributions made by the debtors' friends and family to the

[10] Serra also advised the bankruptcy court that he intended to appeal the district court's decision. He made good on his intent, filing a notice of appeal on October 24, 2011. The Ninth Circuit dismissed his appeal for lack of jurisdiction on the ground that the district court's decision was not a final judgment under 28 U.S.C. § 1291.

funds; no evidence was given "as to when that was done, when it was put in [the debtors'] account, how long it was there, whether it was commingled with other money." Tr. of June 1, 2012 hr'g, 8:1-3. The bankruptcy court stressed that it was "not prepared to find, based on that representation alone, that the debtors were just a conduit for this money." Tr. of June 1, 2012 hr'g, 8:4-6. It found that the check was the debtors' property. Tr. of June 1, 2012 hr'g, 8:17-18. It thus ruled in the Trustee's favor. Tr. of June 1, 2012 hr'g, 8:22.

The bankruptcy court issued a minute order requiring the Trustee to submit factual findings and legal conclusions by June 14, 2012. Civil Minute Order. It allowed Serra until June 21, 2012, to file an opposition. Id.

Serra timely filed his opposition, arguing that the evidence did not support the bankruptcy court's ruling. Defendant's Objection to Court's Ruling of June 1, 2012. He contended that the sole issue before the bankruptcy court was whether the debtors were a conduit for the funds paid to him. Serra argued that the check did not address this issue; no evidence had been presented as to "the origin of [the funds;] whether it was provided by others; whether it was a loan to Debtors; when it was put into the account[;] whether it was derived from multiple deposits, and from multiple checks from others." Defendant's Objection to Court's Ruling of June 1, 2012, 2:4-7. He further noted that the debtors had not been examined. Defendant's Objection to Court's Ruling of June 1, 2012, 2:7-8.

The bankruptcy court issued its memorandum decision on July 17, 2012. It found that the Trustee met his burden in

8

demonstrating that the funds were the debtors' property. It determined that the evidence showed that the debtors wrote a personal check in the amount of $30,000, payable to Serra from their joint bank account. It further noted that Serra had acknowledged in the receipt letter that the check came directly from the debtors.

The bankruptcy court reasoned that because the debtors' names appeared on the check,

> it follow[ed] that Debtors had control over the associated bank account along with any funds in that account, including the $30,000 that was later transferred. Given this control, the Debtors presumably had an ownership interest in the funds located in their bank account immediately before the Debtors transferred them to Serra via a personal check. [Citation omitted].

Memorandum Decision after Trial, 5:21-25.

It noted that Serra did not introduce any evidence "rebutting this presumption and showing that the $30,000 can be traced to another source other than from the Debtors." Memorandum Decision after Trial, 6:2-3. Because he did not appear at or participate in the trial, Serra failed to introduce any evidence to rebut this presumption.

Because it already formally decided the other elements of the Trustee's fraudulent transfer claim, the bankruptcy court ruled in his favor. It entered judgment against Serra on October 5, 2012.[11] Serra appealed.

---

[11] The judgment provided that the funds were the debtors' property "immediately prior to the transfer to Serra." It further provided that the transfer was avoidable under § 548, as

(continued...)

9

**JURISDICTION**[12]

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(E) and (H). We have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

1) Did the bankruptcy court err in determining that the funds were the debtors' property?

2) Did the bankruptcy court err in determining that the

---

[11](...continued)
all of the other elements of the Trustee's claim had been decided on summary judgment. Id.

[12] Under Stern v. Marshall, 131 S. Ct. 2594 (2011), a bankruptcy court generally lacks authority to enter a final judgment on an action to avoid a fraudulent transfer under § 548. However, under Executive Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.), 702 F.3d 553, 566-69 (9th Cir. 2012), a party waives or forfeits his right to a final judgment from an Article III court by failing to object timely to the bankruptcy court's jurisdiction or by participating in litigation before the bankruptcy court. Within the Ninth Circuit, such actions constitute implied consent. Bellingham Ins. Agency, Inc., 702 F.3d at 567-69.

Here, the Trustee asserted in the complaint that the bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157. Serra filed an answer to the complaint on June 23, 2009. We cannot access his answer to the complaint, however, because it was placed under seal, and neither he nor the Trustee has provided a copy of the answer in the record before us. Notably, Serra has not challenged on appeal the bankruptcy court's authority to enter the judgment on the Trustee's fraudulent transfer claim. Because Serra has not raised the issue of the bankruptcy court's jurisdiction over the Trustee's fraudulent transfer claim, he has waived or forfeited his right to adjudication by an Article III court. See Bellingham Ins. Agency, Inc., 702 F.3d at 568-69. We therefore proceed with our analysis.

debtors did not receive reasonably equivalent value for the transfer?

**STANDARDS OF REVIEW**

We review the bankruptcy court's factual findings for clear error and its legal conclusions de novo. <u>Decker v. Tramiel (In re JTS Corp.)</u>, 617 F.3d 1102, 1109 (9th Cir. 2010).

A factual finding is clearly erroneous if it is "illogical, implausible or without support in the record." <u>Retz v. Samson (In re Retz)</u>, 606 F.3d 1189, 1196 (9th Cir. 2010). Where there is admitted evidence in the record to support the bankruptcy court's fact findings, an appellate court cannot substitute its views of the facts for those of the bankruptcy court. <u>Anderson v. City of Bessemer City, N.C.</u>, 470 U.S. 564, 573 (1985). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." <u>Id.</u> at 574.

**DISCUSSION**

A)   <u>Property of the debtor</u>

To avoid a transfer as fraudulent under § 548(a)(1)(B), a bankruptcy trustee must demonstrate that: 1) the transfer involved the debtor's property; 2) the transfer was made within two years of filing the bankruptcy petition; 3) the debtor received less than reasonably equivalent value in exchange for the transfer; and 4) the debtor was insolvent at the time of the transfer or became insolvent because of it. <u>Wyle v. C.H. Rider & Family (In re United Energy Corp.)</u>, 944 F.2d 589, 594 (9th Cir. 1991). The bankruptcy trustee bears the burden of proof by a preponderance of the evidence. <u>See, e.g.</u>, <u>Western Wire Works,</u>

11

Inc. v. Lawler (In re Lawler), 141 B.R. 425, 428 (9th Cir. BAP 1992)("[T]he preponderance of the evidence standard applies in all bankruptcy proceedings grounded in allegations of fraud.") (citing Grogan v. Garner, 498 U.S. 279, 286-87 (1991)). See also 5 Collier on Bankruptcy ¶ 548.11[1][b](Alan N. Resnick & Henry J. Sommer, eds., 16th ed. rev. 2012)(stating that because the bankruptcy trustee will be the plaintiff in a § 548(a) action, he has the burden of establishing his case).

On appeal, Serra disputes the bankruptcy court's determination as to whether the funds were the debtors' property. He argues that the bankruptcy court mistakenly relied on the bank statement, which only demonstrated that the funds came from the debtors' bank account. The bank statement did not show the actual source of the funds. Serra contends that there was no evidence showing whether the funds were the debtors' own or an accumulation of funds from different people.

Although "the term 'property of the debtor' is not defined in the Bankruptcy Code," it is defined broadly. Danning v. Bozek (In re Bullion Reserve of North America), 836 F.2d 1214, 1217 (9th Cir. 1988). Generally, property belongs to the debtor "if its transfer will deprive the bankruptcy estate of something which could otherwise be used to satisfy the claims of creditors." Id. (defining "property of the debtor" within the context of § 547(b)). See also In re Kimura, 969 F.2d 806, 810 (9th Cir. 1992)(defining property as "an aggregate of rights; 'the right to dispose of a thing in every legal way, to possess it, to use it, and to exclude everyone else from interfering with it.'")(quoting Black's Law Dictionary 1095 (5th ed. 1979)).

12

Here, the Trustee presented evidence demonstrating that the debtors owned the funds. At the trial, his counsel submitted a copy of the check made out to Serra; the check listed the names of both debtors and their home address. Counsel for the Trustee also submitted a copy of the debtors' schedules, which listed a checking account with Wells Fargo Bank from which the check was issued. She also submitted a copy of the receipt letter wherein Serra acknowledged that the debtor, Francisco Lujan Garcia, had paid him by check. Serra did not challenge the admissibility of these documents.

Serra complains about the lack of evidence but he himself did not proffer any evidence to counter that proffered by the Trustee. Serra waived his right to present evidence by expressly declining to appear at and participate in the trial. He cannot now cavil the bankruptcy court's finding.

Based on the record before us, we determine that the Trustee satisfied his burden of proof by providing evidence demonstrating that the funds paid to Serra were the debtors' property. Serra did not offer any evidence to rebut the Trustee's evidence. We thus conclude that the bankruptcy court did not err in ruling in the Trustee's favor on the § 548(a)(1)(B) claim against Serra.

B)    Reasonably equivalent value

Serra also appeals the bankruptcy court's determination that the debtors did not receive reasonably equivalent value for the transfer. The district court affirmed the bankruptcy court's determination of this issue on summary judgment. Although Serra appealed the district court's ruling, the Ninth Circuit dismissed

13

his appeal because, in light of the district court's decision and remand, the disposition of the adversary proceeding was not final.  See infra n.10.

The district court resolved the reasonably equivalent value issue in its decision on Serra's first appeal.  If Serra seeks further review of that issue, he must take his arguments to the Ninth Circuit in a further appeal.[13]  See 28 U.S.C. § 158(a) and (b).

**CONCLUSION**

Based on the foregoing discussion and analysis, we AFFIRM.

---

[13] We note that Serra did not present to the bankruptcy court any evidence demonstrating that the debtors received any "reasonably equivalent value" for their own benefit and, consequently, for the benefit of the estate.  See Frontier Bank v. Brown (In re N. Merch., Inc.), 371 F.3d 1056, 1059 (9th Cir. 2004)(stating that "the primary focus of Section 548 is on the net effect of the transaction on the debtor's estate and the funds available to the unsecured creditors"); Gough v. Titus (In re Christian & Porter Aluminum Co.), 584 F.2d 326, 337 (9th Cir. 1978)("Transfers made to benefit third parties are not made for 'fair' consideration.  'A general assignment of a debtor's property must be considered fraudulent if not made solely for the benefit of creditors . . . .'")(quoting 4 Collier on Bankruptcy, ¶ 67.33).  See also Maddox v. Robertson (In re Prejean), 994 F.2d 706, 708-09 (9th Cir. 1993)("reasonably equivalent value" under the California Fraudulent Transfer Act, which adopted the Uniform Fraudulent Transfer Act, is "determined from the standpoint of the creditors.").

14